Charles EVERSOLE, Respondent,

v.

WOODS ACQUISITION, INC. d/b/a Bill Woods Ford, Appellant.

No. WD 62182.

Missouri Court of Appeals, Western District.

March 2, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2004.

Application for Transfer Denied June 22, 2004.

W. Greg Wright, Kansas City, MO, for appellant.

William L. Hall, Independence, MO, for respondent.

Before SMART, P.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Woods Acquisition, Inc. d/b/a Bill Woods Ford ("Woods") appeals from a judgment awarding Charles Eversole $12,000 on claims for breach of implied warranty and negligence under a *res ipsa loquitur* theory. Eversole asserted his 1997 Ford Thunderbird erupted in fire and was destroyed four days after Woods negligently performed maintenance work on the vehicle. On appeal, Woods contends the evidence was insufficient to support the negligence theory and that the trial court misapplied the law in finding a breach of implied warranty on a contract for repair services. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In July 2000, Eversole noticed antifreeze was leaking from his 1997 Ford Thunderbird. He was the original owner of the vehicle and had not previously experienced any mechanical problems with it. Eversole took the vehicle to Woods, where he learned the manufacturer had issued a recall on the engine's intake manifold [1] from which the antifreeze was leaking. Woods replaced the intake manifold and conducted a ten-mile test drive to confirm the vehicle worked properly.

Eversole picked up the vehicle on July 5, 2000, when the repair work was completed. He drove it to work on July 6 and 7, and then used it to run a few errands on July 8. On July 9, Eversole was returning from a visit to his parents' home when he noticed flames coming from under the hood of the vehicle. He got out and called the fire department, but the fire destroyed the vehicle.

Eversole filed a lawsuit against Woods alleging alternative theories of breach of implied warranty and *res ipsa loquitur* negligence in the loss of his Thunderbird. He testified at the bench trial that he did not know what caused the vehicle to erupt in fire. Eversole had driven the vehicle 137 miles in the four days after picking it up from Woods and had no indication of a further mechanical problem until the fire broke out.

Eversole also presented testimony from two of Woods' employees: Joseph Engle, an apprentice mechanic who performed the repair work; and Wyatt Milligan, a supervising mechanic who inspected Engle's work at the time of the repair and viewed the vehicle after the fire. Engle testified that he had to disconnect, set aside, and then reconnect the fuel lines in order to replace the intake manifold. He surmised the fire subsequently occurred when one of the pressurized fuel lines ruptured. Milligan confirmed the vehicle was damaged by a fuel fire concentrated at the right, rear corner of the engine compartment. He also noted significant damage to the right front area, which he thought was likely caused by a high-pressure fuel spray.

On cross-examination, Milligan testified the repair work was not likely the cause of the fire because a fuel leak would have been easily detectable upon his inspection of the vehicle. He also observed that safety locks over the clips connecting the fuel lines were still in place after the fire.

After the close of evidence, the trial judge found "the issues in favor of the Plaintiff and against the Defendant." Woods was ordered to pay damages to Eversole in the amount of $12,000 for the loss of the Thunderbird. Woods appeals.

### STANDARD OF REVIEW

On appellate review of this court-tried case, we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We view the evidence in a light most favorable to the prevailing party, giving it the benefit of all reasonable inferences and disregarding the other party's evidence except as it supports the judgment. *Meyer v. Lofgren*, 949 S.W.2d 80, 82 (Mo.App. W.D. 1997). Because the trial court made no findings of fact or conclusions of law, we consider all facts as having been found in accordance with the result reached. Rule 73.01(c). The trial court's judgment will

---

1. The intake manifold is a component that delivers air to the engine as part of a fuel injection system.

be affirmed if it is correct on any reasonable theory supported by the evidence. *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo. App. W.D.1998).

### SUFFICIENCY OF EVIDENCE ON NEGLIGENCE THEORY

Eversole's negligence claim against Woods was based on a *res ipsa loquitur* theory. *Res ipsa* is a rule of evidence allowing a factfinder to infer from circumstantial evidence that a loss or injury arose from some negligent act of the defendant, without requiring the plaintiff to prove specific acts of negligence. *Hale ex rel. Hale v. City of Jefferson*, 6 S.W.3d 187, 196 (Mo.App. W.D.1999). To make a submissible case, plaintiff must establish that: (1) the incident causing the loss is of the kind that does not ordinarily occur in the absence of negligence; (2) the instrumentality causing the loss is under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the loss. *Weaks*, 966 S.W.2d at 393–94. Plaintiff has the burden of proof and must establish by the greater weight of evidence that the loss resulted from defendant's negligence. *Id.* at 394.

Woods contends Eversole failed to meet his burden of proof on the negligence claim because there was no substantial evidence to establish the three essential elements of a *res ipsa* theory. First, Woods argues Eversole did not produce any evidence to show that a car fire would not normally occur in the absence of negligence. This initial element requires proof that the loss occurred as a result of an "unusual" event, accident, or occurrence. *Grus v. Patton*, 790 S.W.2d 936, 940 (Mo.App. E.D.1990). Whether a given event is an unusual occurrence ordinarily resulting from negligence

"is a judicial decision which is arrived at by judges applying their common experience in life to the event . . . and deciding whether the criteria for res ipsa loquitur are satisfied." *City of Kennett v. Akers*, 564 S.W.2d 41, 45 (Mo. banc 1978).

Woods suggests the fire incident was not unusual because "hundreds, if not thousands, of cars that catch fire each day" without negligence.[2] Eversole's Thunderbird featured an internal combustion engine, made operational by sparks, electrical components, and highly explosive gasoline. The vehicle had been driven nearly 52,000 miles over a three-year period. Woods contends it was Eversole's burden to show that "a car with almost 60,000 miles" would not ordinarily erupt in fire in the absence of negligence.

In making this argument, Woods ignores the fact that the intake manifold repair work was an intervening factor in the circumstances leading to the fire. Eversole's burden was to show that a fuel fire would not ordinarily have occurred, given the vehicle's performance and repair history, without negligence. A party seeking to apply the doctrine of *res ipsa* need not submit facts surrounding the occurrence that exclude all reasonable hypotheses except defendant's negligence. *Weaks*, 966 S.W.2d at 394. Eversole was required to submit enough facts from which the court could conclude that, more often than not, a fire such as this one resulted from a failure to exercise reasonable care on the part of the person in charge of the automobile. *Id.* If Eversole's evidence tended to show the cause of the fire, even if it left some doubt, he could not be deprived of the benefit of the *res ipsa* doctrine. *Id.*

---

2. This assertion in Appellant's Brief is unsupported by any citation to the record or other authority.

■ The evidence at trial was undisputed that Eversole's Thunderbird was destroyed by a fuel fire which erupted in the engine area. Just four days prior to the fire, Woods disconnected and reconnected fuel lines to the engine in the process of replacing the intake manifold. The repair technician believes those same fuel lines later ruptured and caused the fire. Eversole had not had any trouble with the fuel lines before the repair work was performed. In light of this history, the fuel fire was an unusual event. Common life experience also suggests it would be extraordinary for fuel lines to leak and cause a major fire in a three-year old vehicle, even with 52,000 miles of use, without an intervening act of manipulation. The evidence established a reasonable inference that the fuel lines would not have ruptured in the absence of some negligence by Woods in performing the repair work.

■ Woods argues the second *res ipsa* element was not established because there was no evidence that it had management and control over the instrumentalities causing the fire. Noting that it did not repair or replace the fuel lines, Woods contends the act of "merely taking off and reattaching two fuel lines" is insufficient to prove that it "had anything to do with the fire."

We disagree. The evidence was uncontroverted that the fire resulted from leaks in the fuel lines. Whether or not Woods made any actual repair to the fuel lines, its mechanic had to remove, set aside, and reconnect the lines in order to replace the intake manifold. It is clear Woods had control and management over the fuel lines during the course of the repair. The fact that the fuel lines were not leaking at the time Eversole picked up the vehicle does not conclusively prove Woods did nothing to cause the fire. A reasonable inference could be made that if a fuel line is not properly and securely reconnected, it may gradually loosen and then leak fuel within a short time after the vehicle is returned to the customer.[3] The evidence was sufficient to show Woods had control over the instrumentalities which caused the fire.

■ With regard to the third *res ipsa* element, Woods argues there was no substantial evidence that it had superior knowledge about the cause of the fire. Woods released the vehicle to Eversole four days before the fire erupted. Based on the lapse of time in which the vehicle was out of its control, Woods contends Eversole could not establish the element of superior knowledge without proof that the vehicle was damaged when it left the repair shop.

■ Superior knowledge can be inferred when a defendant exercises exclusive control over the instrumentality at issue. *Weaks*, 966 S.W.2d at 395. However, when the evidence of control is attenuated by time or circumstance, there must be additional evidence to show the defendant has superior information, experience, or opportunity to know about the cause of the alleged occurrence. *Gibbs v. Gen. Motors Corp.*, 350 Mo. 431, 166 S.W.2d 575, 581 (1942) (*res ipsa* is based on theory that one in charge of an instrumentality either knew the cause or has the best opportunity to know the cause of damage); *Cremeens v. Kree Inst. of Electrolysis, Inc.*, 689 S.W.2d 839, 842 (Mo.App. E.D.1985) (Training in electrolysis gave defendant

---

**3.** Joseph Engle, the apprentice mechanic, testified that safety clips were placed over the fuel line connectors to insure that, even if the lines are not securely connected, they could not be completely blown off. His testimony leaves open the possibility of latent leaks from non-secure connections, notwithstanding the presence of safety clips.

superior knowledge of cause of plaintiff's facial scarring one month after electrolysis treatment); *Nance v. Morris Motors Inc.,* 863 S.W.2d 694, 697–98 (Mo.App. S.D.1993) (auto repair shop did not have superior knowledge regarding cause of car crash that occurred seven weeks after steering wheel was repaired, car had been driven over 4,000 miles, and shop was not allowed access to car after crash). It is also sufficient to show the defendant *was* in control of the instrumentality at the time the negligent act occurred and that there was no intervening cause between the negligent act and the injury. *Plato Reorganized Sch. Dist. v. Intercounty Elec. Coop. Ass'n,* 425 S.W.2d 914, 917–19 (Mo.1968).

There was considerable circumstantial evidence to indicate Woods had superior knowledge regarding the cause of the fire in Eversole's vehicle. As discussed *supra,* Woods exercised control over the instrumentality of the fire by disconnecting and reconnecting the fuel lines in the course of replacing the engine's intake manifold. It is during this period of control that Eversole contends Woods was negligent in either handling or reconnecting the fuel lines. Although no defect was apparent when Eversole picked up the vehicle, a fire erupted four days later in the same area where the fuel lines had been reconnected. Eversole testified he did nothing other than drive the vehicle 137 miles and did not notice any mechanical problems between the time of the repair and the fire. This testimony reasonably established there was no intervening cause of the fire subsequent to Woods' control of the fuel lines. Two of Woods' mechanics agreed the car fire was ignited by a leak from the fuel lines. One of those mechanics, Milligan, had an opportunity to inspect the burned vehicle, which was further evidence that Woods had superior knowledge regarding the cause of the fire. *Nance,* 863 S.W.2d at 697.

Woods cites three cases, all involving losses from defective vehicles, where Missouri courts declined to find the defendant was in a superior position to know the cause of the loss because the vehicle had been out of the defendant's control for a substantial period of time. *Grus,* 790 S.W.2d at 938, 941 (faulty repairs alleged over an eight-year span); *Nance,* 863 S.W.2d at 697 (steering wheel repairs made seven weeks and 4000 miles before car crash); *Gibbs,* 166 S.W.2d at 576 (brakes failed, causing collision, two months and 1530 miles after purchase of vehicle). Eversole's claim is factually distinguished by the comparatively short elapsed period of four days and his interim use of the vehicle for only 137 miles. This proximity in time and limited use of the vehicle after the repair helped to establish there were no intervening causes of the fuel line leak. Given the lack of other causative factors and Woods' direct manipulation of the instrumentality involved, the evidence was sufficient for the court to reasonably determine Woods was in a superior position to know the cause of the fire.

CONCLUSION

The trial court properly granted relief because Eversole met his burden of proving all three elements of *res ipsa loquitur* negligence. Woods also challenges the court's grant of alternative relief on the breach of implied warranty claim, but we need not address that point in light of our determination that the judgment is adequately supported by the finding of negligence.

The judgment is affirmed.

All concur.