**TOM'S AGSPRAY, LLC., Respondent,**

v.

**Kerry COLE, Appellant.**

**No. WD 71477.**

Missouri Court of Appeals, Western District.

April 13, 2010.

John L. Young, Princeton, MO, for Appellant.

Allan D. Seidel, Trenton, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., KAREN K. MITCHELL, and CYNTHIA L. MARTIN, JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. Kerry Cole appeals the trial court's judgment awarding Tom's Agspray, LLC (Agspray) $5,457.99 for unpaid services and denying Mr. Cole's counterclaim for damages. Agspray sued Mr. Cole after he refused to pay Agspray for all of its expenses in seeding Mr. Cole's land. Mr. Cole admitted that he owed a fee of $6.00 per acre for the seeding but denied owing for the cost of a fertilizer. Mr. Cole counterclaimed for damages allegedly caused by Agspray negligent use of a fertilizer containing nitrogen. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

Mr. Cole entered a contract with the federal government to grow certain vegetation for a quail habitat on 177.1 acres of

his land for a designated conservation reserve program (CRP). He visited Agspray and inquired about the costs to purchase the special seeds and to spread them. Agspray employees told him that Agspray could only spread seeds with a carrier, specifically a fertilizer, and that Mr. Cole would have to speak with the owner, Mr. Tom Meinecke, to obtain the price. Subsequently, Mr. Cole returned and informed Mr. Meinecke that he needed to spread special seeds, CP–33 (quail habitat), on CRP land. Mr. Meinecke stated that Agspray had previously spread seeds on thousands of CRP acres.

After speaking with a seed dealer, Mr. Meinecke and Mr. Cole discussed the cost per acre for the seeds. Mr. Meinecke informed Mr. Cole that potash was the fertilizer normally used to spread seeds; that potash costs twenty cents per pound; and that spreading the fertilizer would cost from "$3.50 to $4.00 per acre." Mr. Cole stated that the use of a carrier was not a problem. Mr. Meinecke explained to Mr. Cole that he could not provide him with a total price for spreading the seeds because, without knowing the form of the seeds, he could not determine how many pounds of fertilizer would be needed to spread them. At some point, Mr. Cole stated that the fertilizer needed to be "inert";[1] Mr. Meinecke did not hear him. Mr. Cole asked Mr. Meinecke if Agspray would spread the seeds even if he purchased them from another agribusiness. Mr. Meinecke agreed to do the job.

Two weeks later, Agspray received the seeds from a seed company. Thereafter, Mr. Cole called Agspray to inform the shop of an approaching deadline and asked what the spreading of the seed costs. Mr.

Meinecke told him, "Well, the application is $6.00." He did not mention using a fertilizer at the time, and Mr. Cole did not tell him not to use one. Mr. Cole told Agspray to do the job. Thereafter, Mr. Meinecke opened the bags of seeds and mixed them with the fertilizer potash and added the fertilizer DAP (diammonium phosphate) for growth. Mr. Meinecke and an employee arrived on Mr. Cole's land to spread the seed mixture. The employee noticed that weeds and grass were growing on the land but spread the seeds as directed. Mr. Meinecke was also concerned with spreading the seeds because he had observed thick vegetation growing and noticed remnants of a soybean crop. He did not tell Mr. Cole his concerns, and Mr. Cole did not provide a soil test. The employee was not able to spread the seeds on nine of the 177.1 acres because of a difficult crossing.

Subsequently, Mr. Cole received a bill from Agspray in the amount of $5,457.99 for spreading seed across 168[2] acres at $6.00 per acre, using 11,544 pounds of DAP at 24.44 cents per pound, and using 11,421 pounds of white potash at 14.26 cents per pound. Mr. Cole disputed the fertilizer charge and claimed that he did not order fertilizer. Mr. Cole sent Agspray payment for spreading the seeds at $6.00 per acre; Mr. Meinecke refused this payment. Agspray sued Mr. Cole on the account. Mr. Cole filed a counterclaim alleging that Agspray negligently applied DAP containing nitrogen to the land, which caused substantial growth to existing vegetation and would require him to replant the CP–33 seeds in compliance with his CRP contract.

1. According to Mr. Cole, "inert" meant that the fertilizer would not cause growth to the existing vegetation.

2. Mr. Meinecke did not charge an application fee for the nine acres that did not receive seeds but charged him for the seed mixture.

After a bench trial, the trial court found that Mr. Cole told Agspray to spread the seeds on his land. It further found that Mr. Cole understood that the seeding application was charged per acre, that a fertilizer was needed to spread the seed, but thought the fertilizer would be inert and would cost little or nothing. The trial court ordered Mr. Cole to pay Agspray the total balance due. Finally, it found that Mr. Cole must solely bear the adverse consequences of spreading fertilizer to the land and denied the counterclaim. Mr. Cole appeals, raising three points.

## Standard of Review

We review the judgment under the standard set forth in *Murphy v. Carron. Dyna Flex Ltd. v. Charleville*, 890 S.W.2d 413, 414 (Mo.App. E.D.1995) (affirming judgment because the contested charges were reasonable). Therefore, we will affirm unless the decision is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.*

## Legal Analysis

In the first point, Mr. Cole argues that the trial court's decision to award Agspray the balance due erroneously applies the law because there was no "meeting of the minds" about the carriers used and the costs charged for spreading the seeds. "An action on an account is based in contract; it requires proof of an offer, acceptance, consideration, the correctness of the account, and the reasonableness of the charges." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 133 (Mo.App. E.D.2005). To prevail in a suit on account, Agspray had to show the following: (1) Mr. Cole requested goods or services from Agspray; (2) Agspray furnished such goods or services to Mr. Cole; and (3) the charges were reasonable. *See*

*Taylor's Auto Parts v. Mayo*, 807 S.W.2d 215, 216 (Mo.App. W.D.1991). A plaintiff is only required to show a "meeting of the minds" or mutuality of assent to prevail in its suit on account when a defendant contests contractual terms or the validity of the contract. *See Heritage Roofing, LLC*, 164 S.W.3d at 133.

At trial, Mr. Cole agreed that there was an oral contract but challenged the terms of the agreement. He argued that he agreed to a flat fee of $6.00 per acre and did not agree to an additional cost for the fertilizer. He also agreed that a carrier would be used but did not agree to the use of a fertilizer unless it was "inert." Accordingly, Agspray had to show "a meeting of the minds" to prevail. To show "a meeting of the minds," the plaintiff must show that the terms of the contract were certain or capable of being made certain. *Massac Envtl. Techs., Inc. v. Futura Coatings, Inc.*, 929 S.W.2d 318, 321 (Mo.App. E.D.1996). We look at the parties' actions and words to determine if there was mutual assent to the terms. *Heritage Roofing, LLC*, 164 S.W.3d at 134; *see also Silver Dollar City, Inc. v. Kitsmiller Constr. Co.*, 931 S.W.2d 909, 914 (Mo.App. S.D.1996) ("[W]hat a person may have intended subjectively is not controlling. The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties....."). Whether there was "a meeting of the minds" is a question of fact for the fact finder—in this case, the trial court. *See Silver Dollar City, Inc.*, 931 S.W.2d at 914.

Mr. Cole argues there was no meeting of the minds because he did not receive the goods or the services he requested, nor did Agspray perform the work at the agreed price. Mr. Cole asserts that he requested a bid price per acre from Mr. Meinecke for spreading cer-

tain seeds in a cost-share government program. He was told via the telephone that it would cost $6.00 per acre to spread the seeds and was not at that time informed of additional costs. To show the absence of mutuality of assent about the use of DAP as a carrier, he cites his statement to Mr. Meinecke that any fertilizer needed to be inert. He also quotes Mr. Meinecke's trial testimony stating, "Well, I'm not saying it would have been a requirement that I had to use DAP. I could have used more potash." He also asserts that Mr. Meinecke and his employee admitted that the use of DAP rather than potash would cause the existing vegetation to grow because of the nitrogen in DAP. Finally, he asserts that Mr. Meinecke knew that he was seeding for a CRP and should have discovered that nitrogen should not have been applied to the ground.

■ The evidence shows that Mr. Meinecke and Mr. Cole agreed to several terms. The trial court found that the terms of the agreement were that Agspray would spread the special seeds across Mr. Cole's land mixed with a fertilizer and that Mr. Cole would pay an application fee plus the cost of the fertilizer. The trial court has the freedom to believe or disbelieve all, part, or none of the witnesses' testimonies. *Bland v. Schubert,* 941 S.W.2d 24, 27 (Mo.App. S.D.1997). Thus, the trial court was free to believe Mr. Meinecke and free to disbelieve Mr. Cole. We must defer to this credibility determination. *Id.* Because there was evidence from which the trial court could ascertain terms of an agreement, the trial court did not err in finding a meeting of the minds. Thus, Mr. Cole's first point is denied.

■ In the second point, Mr. Cole argues that the trial court erred in determining that the amount charged was reasonable because it was above the bid price ($6.00 per acre). He also asserts that

Agspray used a higher priced fertilizer, DAP, which contained chemicals to cause plants to grow, and should have only used the lower priced fertilizer, potash, which would not have caused the existing vegetation to grow. Mr. Cole states that the price charged was unreasonable because the expensive fertilize, DAP, was used rather than the cheaper fertilizer, potash; and the use of potash would not have caused damage to the land. As an element of its action on account, Agspray had the burden to show that the charges were reasonable. *See Jerry Ward Constr. Co. v. Executive Hills Home Builders, Inc.,* 777 S.W.2d 629, 630 (Mo.App. W.D.1989) (stating a plaintiff in an account action has the burden to prove reasonableness of labor similar to a plaintiff bringing a *quantum meruit* action). A plaintiff proves the reasonableness of a charge by adducing the reasonableness as to price breakdown or as to the lump sum amount. *See Massac Envtl. Techs., Inc.,* 929 S.W.2d at 320. In doing so, "[a] party may place value upon his own services." *Id.*

Mr. Meinecke presented the following evidence concerning the charges. He introduced the bill into evidence and reiterated the charges. Mr. Meinecke then stated that several pounds of fertilizer were used to give the seeds bulk because they were so light, similar to "ground hay." He testified that the estimated application cost of $4.00 per acre became $6.00 per acre because double spreading of seeds and fertilizer always cost $6.00. This evidence was insufficient to show reasonableness of charges.

■ "Reasonableness" is an objective showing; merely presenting the bill is not sufficient evidence of reasonableness. *Miller v. Horn,* 254 S.W.3d 920, 925 (Mo. App. W.D.2008). Nor is the testimony that the application charge for seeds and fertilizer is "always $6.00." *See id.* (find-

ing a statement that the price is standard for such service is insufficient). Although Mr. Meinecke provided evidence as to the reasonableness of the quantity of fertilizer used, he did not adduce evidence about the reasonableness of the costs for the carriers. Evidence concerning the reasonableness for both price of materials and quantity used are needed to show reasonableness of charges. *See Jerry Ward Constr. Co.*, 777 S.W.2d at 630 (finding reasonableness of charges for labor not shown because plaintiff only showed reasonableness of an hourly rate but did not present evidence showing reasonableness of hours expended). Also, Mr. Meinecke testified that the use of the more expensive fertilizer was not necessary, which refutes the reasonableness of that charge. Consequently, Agspray failed to show the reasonableness for its charges. The trial court erred in finding the damages reasonable. Mr. Cole's second point is granted.

 In the third point, Mr. Cole argues that the trial court erred in denying the counterclaim of negligence because he relied on Agspray representation that it was familiar with government and CRP programs; Agspray breached its duty when it used a DAP fertilizer to spread the seeds rather than a different fertilizer without nitrogen that would not have caused the existing vegetation to grow; and the adding of nitrogen caused damage because the existing vegetation grew rather than the special program seeds.

To prevail on a negligence claim, Mr. Cole was required to establish that: (1) Agspray had a legal duty to conform to a standard of conduct; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4)

actual damages to Mr. Cole's property. *See Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). The judgment is unclear as to which element or elements the trial court decided that Mr. Cole failed to satisfy in his negligence action against Agspray.[3] We thus apply Rule 73.01, which states that where the trial court fails to render findings or conclusions on a issue, "we consider all facts as having been found in accordance with the result reached." *Eversole v. Woods Acquisition, Inc.*, 135 S.W.3d 425, 427 (Mo.App. W.D.2004).

 Mr. Cole argues that Agspray owed him a duty because Agspray is an agri-business that spreads seeds and fertilizers, it knew about federal conservation programs, and it was hired to provide seed application for his CP–33 program knowing that any spreading had to be inert.

A legal duty owed by one to another may arise from at least three sources: (1) it may be [prescribed] by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral.

*Hackmann v. Mo. Am. Water Co.*, 308 S.W.3d 237, 239 (Mo.App. E.D.2009). The law imposes upon a person who provides services the duty to render those services with "some degree of care and skill." *Hoover's Dairy, Inc.*, 700 S.W.2d at 432 (internal quotation marks and citation omitted). Whether a duty exists is a question of law, but conclusions about the facts

---

**3.** It appears that the trial court believed Mr. Cole sustained damages based on its finding that "damages as calculated by Defendant

may well reflect his costs for undoing what was done and then doing it a second time."

of the case are questions for the fact-finder. *Hackmann*, 308 S.W.3d at 239–40.

Even if we determine a duty in the law existed and there was a breach of that duty, the trial court's decision must still be affirmed because the evidence supports a finding against causation. *See Eversole*, 135 S.W.3d at 427–28 (stating we will affirm the judgment if it is correct under any theory). Whether the breach of that duty caused damages to the plaintiff is a question of fact. *Wright v. Barr*, 62 S.W.3d 509, 524 (Mo.App. W.D.2001). A plaintiff establishes causation by showing that defendant's breach was the cause in fact for the injury and the proximate cause of the injury. *Id.* To determine if a plaintiff has shown the defendant's breach was the cause in fact, the following question is asked: But for the defendant's conduct, would the plaintiff have been injured? *Id.*

Mr. Cole claims Agspray breached the duty by using DAP fertilizer that contained nitrogen which caused the existing vegetation to grow. Mr. Meinecke testified that a previous crop left some nitrogen in the soil. Both Mr. Meinecke and his employee testified that Mr. Cole's existing vegetation was thick and already growing before they spread the mixture of seeds, DAP, and potash. Mr. Cole admitted that he had not taken samples of the soil to measure the amount of nitrogen present in the soil. After hearing the evidence, the trial court found that "the responsibility for any adverse consequences ... rest with [Mr. Cole]" and "those [damages] must be borne by him alone." The trial court also found that Mr. Cole did not take soil samples before Agspray spread the seeds and DAP. It was imperative that Mr. Cole supply the trial court with a soil test to show that the added nitrogen caused the additional growth. The trial court could have determined that, absent a soil test, Mr. Cole could not establish that but for the added nitrogen, the existing vegetation would not have grown. It can be inferred from these findings that the trial court determined that Mr. Cole did not meet his burden to show causation. Based on this evidence and the fact that we must infer findings in favor of the trial court's decision, Mr. Cole did not satisfy the burden of proof for his counterclaim of negligence. *See Eversole*, 135 S.W.3d at 428. Mr. Cole's third point is denied.

### Conclusion

Therefore, we affirm the trial court's ruling that there was an agreement for services and goods. We also affirm the trial court's denial of Mr. Cole's counterclaim. However, we reverse the award of damages and remand the case to the trial court for an evidentiary hearing if the trial court deems it necessary.

MITCHELL and MARTIN, JJ. concur.