**STEELHEAD TOWNHOMES, L.L.C., et al., Respondents,**

v.

**CLEARWATER 2008 NOTE PROGRAM, LLC, et al., Appellants.**

WD 80368

Missouri Court of Appeals, Western District.

Filed: October 31, 2017

Jonathan Sternberg, Kansas City, for appellant.

John M. Duggan, Deron A. Anliker, Overland Park, KS, for respondent.

Before Division One: Gary D. Witt, P.J., and Alok Ahuja and Edward R. Ardini, Jr., JJ.

Alok Ahuja, Judge

Steelhead Townhomes, LLC and its principals sued Clearwater 2008 Note Program, LLC and other affiliated persons and entities in the Circuit Court of Cass County. Steelhead's petition alleged that Clearwater and its affiliates had engaged in misconduct which resulted in the unjustified foreclosure of real property owned by Steelhead. Following a bench trial with an advisory jury, the circuit court entered judgment in Steelhead's favor on its claims for breach of fiduciary duty and unjust enrichment, and awarded it $650,000 in compensatory damages.

Clearwater appeals. We affirm.

### Factual Background

Barney Ashner and Daniel Waldberg (both now deceased) were in the business of developing residential real estate in the greater Kansas City area. In 2008, one of the banks that financed a number of Ashner and Waldberg's projects, TeamBank, was facing regulatory scrutiny, and was seeking to raise capital by offering customers reduced payoffs on their existing loans.

Ashner and Waldberg met with principals of Clearwater REI, LLC ("REI") in the Fall of 2008. REI is a private investment fund based in Idaho, and the parent company of Clearwater 2008 Note Program, LLC ("Clearwater"). Ashner and Waldberg's primary contact at REI was Dan Welker, an employee who investigated investment and loan opportunities for REI

(some of which were implemented through Clearwater). Welker was charged with putting together deals for "opportunistic value investments," in which REI would purchase real-estate properties from banks and other sellers at "deep discounts."

Welker, Ashner and Waldberg discussed a variety of real-estate-related business opportunities. One project involved the property at issue in this litigation: the Legends at Raymore. In December 2008, the Legends at Raymore project had two components: (1) nineteen existing townhomes which Ashner and Waldberg had constructed, with financing from Team-Bank; and (2) the contemplated construction of sixty-eight additional townhomes. TeamBank was offering Ashner and Waldberg a reduced payoff amount for their existing loan at the Legends. Welker, Ashner and Waldberg contemplated that REI would invest in the Legends project in two ways: first, it would provide loan financing to refinance the TeamBank loan on the existing nineteen townhomes; and second, REI would then assume an equity position in the development of the additional townhomes. The parties were also discussing additional potential joint projects. The only transaction which actually closed, however, was the refinancing of the TeamBank loan on the existing nineteen townhomes at the Legends.

Steelhead was created on March 2, 2009 by Waldberg and Ashner for the purpose of consummating the loan from Clearwater to refinance the TeamBank loan. On March 5, the parties closed on a loan for $1.562 million. The loan was memorialized in a Loan Agreement, a Promissory Note Secured by Deed of Trust, a Deed of Trust, and a Repayment Guaranty signed by Ashner and Waldberg. The closing of the transaction was hurried due to Team-Bank's pending takeover by the Federal Deposit Insurance Corporation ("FDIC").

As a result, the loan documents are not a model of clarity concerning the exact terms of the transaction. For example, the documents are inconsistent concerning the maturity date for the loan. Although the Note defines the "Maturity Date" for the loan as July 5, 2009 (four months after the loan's inception), the following paragraph states that "all outstanding principal and all interest accrued thereon and unpaid shall be due and payable on the first anniversary of this Note." The Loan Agreement and Deed of Trust refer to the debt as a four-month loan. The documents are also confusing concerning the availability of, and cost for, any extensions of the loan. The documents also erroneously list unrelated parties as "Borrowers."

In June 2009, Steelhead sought refinancing for the Clearwater loan through Great Western Bank. Great Western sent a refinance letter to Clearwater. Welker stated to REI's principals that the earliest closing date for the refinance would be July 10, "five days after the note is due." As a result, Welker said "a modest penalty is in order along with telling [Waldberg] we are beginning foreclosure work whether or not we actually are. Nothing focuses the mind like the threat of a good hanging...."

After Clearwater commenced the foreclosure process on the Legends at Raymore property in July, Waldberg disclosed the impending foreclosure to Great Western. Great Western withdrew its offer to refinance the loan as a result. At the same time, Welker continued to pressure Waldberg to pay a $78,100 late fee, telling Waldberg that Welker was "getting a lot of fucking pressure" and that Clearwater is a "fee-driven company."

Clearwater foreclosed on the townhomes, which had an estimated value substantially in excess of the outstanding amount of the Steelhead loan. The proper-

ties also generated $18,000 in rent per month.

In October 2009, Steelhead, Ashner, and Waldberg filed a petition against Clearwater and REI, as well as various affiliated individuals. The plaintiffs' amended petition stated thirty-three counts. Clearwater asserted eight counter-claims against Steelhead, Ashner and Waldberg.

The trial court entered an order enforc-ing the contractual jury waiver and Idaho choice of law provision in the loan docu-ments. The claims and counterclaims were tried to the court; the court submitted twenty-four of the plaintiffs' affirmative claims to the advisory jury. At trial, one of the principal issues in dispute between the parties was whether the parties' loan agreement contemplated a twelve-month or instead a four-month loan, and there-fore whether the defendants acted wrong-fully in declaring a default on the loan, and foreclosing on the Legends townhomes, in June and July 2009. The plaintiffs sought common damages on their various claims, consisting principally of the lost equity in the foreclosed townhomes (i.e., the amount by which the fair market value of the townhomes exceeded the outstanding Clearwater debt), and the rental income retained by Clearwater following the fore-closure.

Of the twenty-four claims submitted to the advisory jury, the jury ruled in the defendants' favor on all but one. On the sole claim on which it found for any of the plaintiffs, the jury awarded Steelhead a judgment of $650,000 on its claim for breach of fiduciary duty against Clear-water. The circuit court followed the advi-sory jury's verdict. The circuit court en-tered judgment for Clearwater on all claims except for Steelhead's claim for breach of fiduciary duty, and its claim for unjust enrichment (which had not been submitted to the advisory jury). The circuit court awarded Steelhead compensatory damages of $650,000 on both the breach of fiduciary duty and unjust enrichment counts. The court denied Clearwater relief on all of its counterclaims.

The case was originally appealed to this Court in Case No. WD78422. We dis-missed that appeal for lack of a final judg-ment, based on our conclusion "that the circuit court did not resolve Steelhead's counts in its first amended petition for promissory estoppel, prior material breach, unclean hands, negligent and mali-cious breach of contract against Clear-water, negligent misrepresentation against Clearwater, and equitable estoppel." *Steel-head Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*, 504 S.W.3d 804, 806 (Mo. App. W.D. 2016). On remand, the parties stipulated to the dismissal with prejudice of the claims which this Court had found were unresolved, and the circuit court entered judgment to that effect on January 13, 2017. Clearwater again appeal-ed.

### Standard of Review

In this case ... the trial was to an advisory jury, so that the end of the litigation was a judgment rendered by the court. Rule 73.01(a) & (b). Appellate review of such a judgment is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Accord-ingly, we will not disturb the judgment entered unless it is against the weight of the evidence, or not supported by sub-stantial evidence, or erroneously applies or declares the law. The judgment will be affirmed if properly supportable on any reasonable theory.

*Mo-Kan Teamsters Health & Welfare Fund v. Clark*, 803 S.W.2d 61, 63 (Mo. App. W.D. 1990) (other citations omitted). Because no party requested findings of

fact· and the circuit court offered none, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

### Discussion

On appeal, Clearwater challenges both bases for the circuit court's judgment: its findings in Steelhead's favor on its breach of fiduciary duty claim, and on its unjust enrichment claim.[1] Clearwater argues on appeal that the business relationship between Clearwater and Steelhead did not give rise to fiduciary duties, and that Steelhead's unjust enrichment claim must fail because an enforceable contract governed the parties'· relationship.

The circuit court awarded the same $650,000 in damages to Steelhead on its breach of fiduciary duty and unjust enrichment claims. Therefore, if we can affirm the judgment on either theory, it is unnecessary to consider the other. For reasons explained below, we affirm the judgment in Steelhead's favor on its unjust enrichment claim, and do not address Clearwater's separate challenge to the circuit court's findings on the fiduciary judgment claim.

■ As Clearwater points out, the law in Missouri is that, "[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010) (citations omitted); *see* *also Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014).

Although the circuit court did not make explicit findings of fact, its comments during trial, and during a post-trial hearing, indicate that the court found that Clearwater and Steelhead had not entered into an enforceable contract because there was ·no· "meeting of the minds" as to essential terms of the transaction. Thus, at the close of Steelhead's evidence, the court stated that "[i]t has been very clear to me that ... everybody had different feelings about what was going on and who should have done what during the course of this." The court stated that "there was confusion as to how they were going to charge and what they were going to charge anybody in this case, and that's the problem that you've got here."

Similarly, at a post-trial hearing the court remarked that the attorney who drafted the loan documents "basically ... dropped herself on the sword saying I messed this thing up and nobody knew what the rules were with regard to handling this money transfer." The court explained that

> I wasn't sure how everybody came to the agreement and what they were wanting to do because this is a real estate situation where usually I have it all in writing and it's clear who is doing what and what their obligations are. That's where I think that I had my biggest issues when I was listening to the evidence and when I was taking notes on it, is that everybody seemed to have a different idea and created new rules on how they were going to collect it and what they were going to charge

---

1. In its opening Brief, Clearwater also asserted a third .Point, challenging the circuit court's grant of judgment to Ashner and Waldberg on Clearwater's counterclaim against them based on their guarantees of Steelhead's debt. Given that Ashner and Waldberg are both now deceased, Clearwater indicated in its Reply Brief that it was abandoning this third Point, and we do not further address it.

for fees.[2]

The documents executed on March 5, 2009, provide that they will be interpreted according to Idaho law. Clearwater's Point challenging the unjust enrichment judgment argues that there was "no substantial evidence of anything other than an express contract between the parties under Idaho law," and Steelhead does not dispute that Idaho law should determine whether the parties entered into an enforceable contract. We therefore address the "meeting of the minds" issue principally under Idaho law.

■ Under Idaho law,

In order for a contract to be formed there must be a meeting of the minds. A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance. The "meeting of the minds" must occur on all material terms to the contract.

*Barry v. Pac. W. Const., Inc.,* 140 Idaho 827, 103 P.3d 440, 444-45 (2004) (citations omitted).

An agreement that is so vague, indefinite and uncertain that the intent of the parties cannot be ascertained is unenforceable, and courts are left with no choice but to leave the parties as they found them. Where a contract is too vague, indefinite, and uncertain as to its essential terms, and not merely ambiguous, there has been no "meeting of the minds" which is necessary for contract formation and courts will leave the parties as they found them. Thus, a court cannot enforce a contract unless it can determine what it is.

*Alexander v. Stibal,* 161 Idaho 253, 385 P.3d 431, 438 (2016) (citations and internal quotation marks omitted); *see also, e.g., Silicon Int'l Ore, LLC v. Monsanto Co.,* 155 Idaho 538, 314 P.3d 593, 602 (2013). "The law does not favor the destruction of contracts because of uncertainty," however. *Alexander v. Stibal,* 385 P.3d at 438 (citation omitted).[3]

■ Clearwater argues that, because the parties executed written documents which were intended to embody their agreement, the trial court's only task was to interpret and enforce those written documents. To the extent the court determined that the written documents were ambiguous, Clearwater contends that the court should have resolved that ambiguity using canons of construction, and had no authority to declare the agreement unenforceable.

Clearwater's claim that a written agreement can *never* be so vague or uncertain as to be unenforceable misstates Idaho

2. In an earlier order concerning preliminary injunctive relief, the circuit court (through a different judge than the judge who tried the case), stated:

The loan documents in this case, including the Deed of Trust, Note and Loan Agreement, are in disarray and are confusing. Individuals not associated with the transaction are listed as Borrowers or Guarantors. The Trustee is described differently in the Deed of Trust and Note. The Loan Agreement, offered into evidence by the Defendants, is not signed by the Defendants. Documents list the maturity date as July 5, 2009 but then use the term "anni-

versary" or "first anniversary" to describe repayment requirements for both interest and principal. The documents leave undefined the term anniversary. All of these inconsistencies in the documents must be construed against the drafter, in this case the Defendants seeking to use the remedy of non-judicial foreclosure.
(Footnote omitted.)

3. Missouri law is generally similar. *See, e.g., Ark.-Mo. Forest Prods., LLC v. Lerner,* 486 S.W.3d 438, 448 (Mo. App. E.D. 2016); *Tom's Agspray, LLC v. Cole,* 308 S.W.3d 255, 259 (Mo. App. W.D. 2010).

law. The Idaho Supreme Court has explained:

> Generally the presence of an ambiguous term in a contract document presents an issue of interpretation, requiring the trier of fact to determine the intent of the parties. *In some cases, however, parties attribute such different meanings to the same term that there has been no "meeting of the minds" which is necessary for contract formation.* An agreement that is so vague, indefinite and uncertain that the intent of the parties cannot be ascertained is unenforceable, and courts are left with no choice but to leave the parties as they found them.

*Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 152 P.3d 604, 608 (2007) (emphasis added; citations omitted); *see also, e.g., Gulf Chem. Employees Fed. Credit Union v. Williams*, 107 Idaho 890, 693 P.2d 1092, 1095-96 (1984) (finding restrictive endorsement on check to be too vague to establish a binding contract); *Ferguson ex rel.*

*McLeod v. Coregis Ins. Co.*, 527 F.3d 930, 934 (9th Cir. 2008) (applying Idaho law; finding written endorsement to insurance policy to be too indefinite to form an enforceable contract).[4]

■ Under Idaho law, "[w]hether the parties intended to form a contract is a question of fact to be determined by the trier of fact." *Griffith*, 152 P.3d at 609 (citations omitted).[5] The evidence in this case was sufficient to support the circuit court's factual conclusion that the parties had failed to come to an agreement on essential terms of the loan transaction. We focus on the lack of clarity concerning the duration of the loan, since this issue is at the center of the parties' present dispute. The documents are fatally inconsistent concerning the term of the loan. The Promissory Note—which states that it governs "[i]n the event of any inconsistencies [with] ... the terms of any other document related to the loan"—is *internally inconsistent* concerning the loan's dura-

---

**4.** In its Reply Brief, Clearwater relies on *Don King Equipment Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 368-69 (Mo. App. S.D. 2003), to argue that the circuit court erred by refusing to enforce the written loan documents. *Don King* does not alter our analysis. First, Clearwater's opening Brief argued only that the parties' written agreement was enforceable *under Idaho law.* Clearwater cannot reverse field in its Reply Brief, and argue instead that Missouri law should control the issue. In addition, in *Don King*, the trial court found an agreement unenforceable because the parties disagreed over the meaning of a single word in the written contract—"attachments." *Id.* at 368. This case is different. Here, separate provisions of the written documents are in irreconcilable conflict with one another. *Don King* rejected the argument that "there [would be] no meeting of the minds, and thus no contract, any time parties are unable to agree upon the meaning or interpretation of a contract or its terms." *Id.* at 369. We do not read *Don King* to hold, however, that an enforceable contract necessarily exists in *every* case in which the parties have

executed a writing to memorialize their agreement. For a recent case in which this Court found no "meeting of the minds" under Missouri law, despite the parties' execution of a detailed written contract, *see Soybean Merchandising Council v. AgBorn Genetics, LLC*, No. WD79901, 534 S.W.3d 822, 829–30, 2017 WL 2772631, at *4 (Mo. App. W.D. June 27, 2017); *see also Fedynich v. Massood*, 342 S.W.3d 887, 891-92 (Mo. App. W.D. 2011) (although recognizing that "when the parties have written down an agreement in terms to which they both have acceded, the courts are reluctant to hold the agreement ineffectual for indefiniteness" (citations and internal quotation marks omitted), nevertheless finding that written agreement failed to establish meeting of the minds where its terms were "unduly uncertain").

**5.** Missouri law is similar. *See, e.g., Tom's Agspray, LLC v. Cole*, 308 S.W.3d 255, 259 (Mo. App. W.D. 2010) ("Whether there was 'a meeting of the minds' is a question of fact for the fact finder"; citation omitted).

tion. The Note states that its "Maturity Date" is July 5, 2009—four months after the loan was closed. Yet the *very next provision* of the Note states the opposite: it provides that "[a]ll outstanding principal and all interest accrued thereon and unpaid shall be due and payable on the first anniversary of this Note."[6] The Loan Agreement, for its part, provides that "[a]ll sums due and owing under this Agreement and the other Loan Documents shall be payable in full on July 5, 2009," although it also specifies that Steelhead must provide financial statements every six months, and that Ashner and Waldberg must provide financials on September 30 of every year. The Deed of Trust states that "[t]he maturity date of the Note is July 5th, 2009."

Thus, the written documents fail, on their face, to establish the existence of a definite and certain agreement concerning the length of Clearwater's loan to Steelhead; to the contrary, the written documents are internally inconsistent on this critical issue. The circuit court was entitled to find that the extrinsic evidence did nothing to remedy the fundamental inconsistency in the loan documents. Waldberg testified that it was his understanding throughout the negotiations that the Clearwater loan would have a one-year maturity. Further, the evidence indicated that, prior to approving the loan, REI's investment committee discussed their belief that the loan could be refinanced within twelve months, and REI generated spreadsheets calculating the payoff amount on the loan as of February 28, 2010—just a few days shy of a full year. The fact that the Loan Agreement asked for semi-annual financial statements from Steelhead, and annual financial statements on September 30 from Asher and Waldberg, is also inconsistent

with a four-month loan running from March 5 to July 5, 2009. On the other hand, Welker testified that the agreement was for a four-month loan, and that any references in the loan documents to a twelve-month term were mistaken.

In these circumstances—and in the face of internally inconsistent written documents—the circuit court had substantial evidence to support its conclusion that the parties had failed to agree to definite and certain contract terms. Given the finding that the parties had no enforceable express contract, Clearwater's challenge to the judgment on the unjust enrichment claim fails.

 Clearwater argues that Steelhead is estopped from arguing that no enforceable contract existed, because it sued Clearwater (unsuccessfully) for breach of contract, and alleged that an enforceable contract existed for a twelve-month loan. Steelhead was entitled to plead in the alternative under § 509.110, RSMo, and Rule 55.10, however. In particular, it is well-established that a party may plead claims both for breach of contract, and on equitable theories which are only available in the *absence* of a contract. *See, e.g., Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. App. W.D. 2008). Clearwater did not raise any objection in the trial court that Steelhead should be required to elect its remedies, and thereby waived the issue. *See Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994) (citing *Steinberg v. Fleischer*, 706 S.W.2d 901, 907 (Mo. App. E.D. 1986)).

 Citing *Von Jones v. Chapungu Safaris*, No. 1:11-CV-00027-BLW, 2013 WL 5876280 (D. Idaho Oct. 31, 2013), Clearwater also argues that the parties'

---

6. The common meaning of an "anniversary" is "the *annual* recurrence of a date marking an event or occurrence of notable impor-

tance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 87 (unabridged ed. 1993) (emphasis added).

partial performance of the loan agreement served to cure any indefiniteness in the written documents themselves. *Von Jones* recognized that part performance under an agreement " 'may remove the uncertainty and establish that a contract enforceable as a bargain has been formed.' " *Id.* at *4 (quoting RESTATEMENT (2D) OF CONTRACTS § 34(2) (1981)). In this case, however, the parties' partial performance sheds no light on whether the agreement was for a four- or twelve-month loan. Because the parties' partial performance in this case does not "give meaning to indefinite terms of [the] agreement," RESTATEMENT (2D) OF CONTRACTS § 34 comment c, it cannot salvage what is otherwise a fatally indefinite contract.

■■■ We also note that, even if the trial court erroneously held that Steelhead was entitled to recover for unjust enrichment, it does not appear that Clearwater was prejudiced by that ruling. The lack of prejudice would be a sufficient reason to affirm, since Rule 84.13(b) provides that "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."

Clearwater has argued on appeal that the judgment for Steelhead on its unjust enrichment claim was erroneous, because an enforceable express contract existed between the parties. Clearwater also acknowledges that, if the circuit court found the extrinsic evidence insufficient to resolve ambiguities concerning the length of the loan, "it was at liberty to resolve the dispute by construing the written agreement against the drafter, Clearwater, and apply the twelve-month term."

The circuit court's judgment makes unmistakably clear that the court—as factfinder—found the extrinsic evidence insufficient to resolve the parties' dispute as to whether the Clearwater loan was for a four-month or twelve-month term. Therefore, according to Clearwater, the court was entitled to interpret the agreement against Clearwater as having a twelve-month duration. If the loan contract was for a twelve-month term, however, Clearwater breached that contract when it initiated foreclosure proceedings four months into the loan's term. In addition, Steelhead's damages evidence was identical on each of the theories it pursued in the circuit court. Indeed, Clearwater itself acknowledges that "[a]ll the damages Steelhead sought flowed directly from its allegations that Clearwater breached the parties' express contract and, by such breach, wrongfully received the rents from and equity in the property."

Thus, if Clearwater were correct that the parties had an enforceable express contract, it appears that the result would be the same: the agreement would be interpreted as having a twelve-month term; the circuit court would find that Clearwater breached that agreement by declaring a default, and conducting a foreclosure, during the loan's term; and as a result of that breach, Steelhead would be entitled to compensation in precisely the same amount which the circuit court awarded for unjust enrichment. In these circumstances, reversal would be unwarranted even if Clearwater were correct that Steelhead had no viable claim for unjust enrichment.

### Conclusion

The judgment of the circuit court is affirmed.

All concur.