**Saundra WHITE, Appellant,**

v.

**EMMANUEL BAPTIST CHURCH, et al., Respondents.**

**WD 79999**

Missouri Court of Appeals, Western District.

OPINION FILED: May 30, 2017

---

918

Taylor Fields, Kansas City, MO 64105, for appellant.

Sherwin L. Epstein, Leawood, KS, for respondents.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Saundra White ("Plaintiff") appeals from the trial court's grant of summary judgment in favor of Emmanuel Baptist Church ("Church"), Frank Fields, Eddie Slaughter, Ebbie Lee Stanley, and Carlton Strickland (collectively "Defendants") on her claims of conversion, unjust enrichment, breach of contract, failure to produce documents, and an *ultra vires* act. We affirm in part and reverse in part.

## Factual and Procedural Background

Viewed in the light most favorable to Plaintiff, the party against whom summary judgment was entered, the uncontroverted facts are as follows. *See ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Plaintiff is the widow of Reverend Willis H. White ("Rev. White"). Plaintiff and Rev. White married on July 10, 1972. Rev. White is survived by Plaintiff, his children with Plaintiff, and children from a previous marriage. Rev. White was the Church's pastor at the time of his death in December 2012, and Plaintiff was an employee. The individually-named defendants are directors of the Church.

After Rev. White's death, disputes arose between the parties over items and amounts owed to Rev. White, Plaintiff, or both. These disputes led to Plaintiff filing a petition asserting five counts. Plaintiff sought to recover: the value of property allegedly owned by Rev. White; on an alleged employment contract between Rev. White and the Church; on an alleged employment contract between Plaintiff and the Church; the amount of loans allegedly made to the Church by Plaintiff and Rev. White; and the value of investment certificates held by Plaintiff and Rev. White. Plaintiff also alleged that the Church engaged in an *ultra vires* act in hiring a new pastor, and failed to produce documents on request as required by section 355.826.[1] Defendants' answer asserted a variety of affirmative defenses, including that Plaintiff did not have standing to pursue recovery on behalf of Rev. White, and that Plaintiff's claims for payment of loans and investment certificates were barred by the statute of limitations. Subsequently, Defendants moved for summary judgment on all of Plaintiff's claims.[2] The trial court

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. Defendants' motion for summary judgment erroneously noted in its caption that the mo-tion applied only to Counts II through V of Plaintiff's Petition. Defendants' suggestions in support of the motion for summary judgment

granted summary judgment against Plaintiff on all of her claims.[3]

This appeal follows. Additional facts will be discussed as necessary.

## Standard of Review

An appellate court "reviews the grant of summary judgment *de novo*." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). The appellate court must apply "the same criteria as the trial court in determining whether summary judgment was proper." *Id.* "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.*

■ A defending party may establish a right to summary judgment by showing any of the following:

(1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense."

*Id.* at 453 (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381).

Additionally, an appellate court reviews the record below in the light most favorable to the party against whom summary judgment was entered. *Id.* "[T]hat party is entitled to the benefit of all reasonable inferences from the record." *Id.* (quoting

*Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 177-78 (Mo. App. W.D. 2009)).

■ "However, facts contained in affidavits or otherwise in support of the [moving] party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* (quoting *Hammack*, 284 S.W.3d at 177-78). "[T]he non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial." *Central Trust and Inv. Co. v. SignalPoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014) (citing Rule 74.04(c)(2), (c)(4)). "Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are deemed admitted." *Id.*

## Analysis

Before addressing Plaintiff's points on appeal, our analysis will benefit from first summarizing the theories for recovery alleged in Plaintiff's petition and the trial court's basis for entering summary judgment on each theory.

Count I of Plaintiff's petition alleged conversion of Rev. White's personal and intellectual property. Defendants moved for summary judgment on Count I based on Plaintiff's lack of standing to act as the sole heir of Rev. White's estate, and because Plaintiff could not prove each of the essential elements of conversion. The trial court granted summary judgment on Count I on the basis that Plaintiff did not have standing to proceed on behalf of Rev. White's estate.

Count II of the petition alleged a claim for unjust enrichment based on Rev. White's employment services to the

---

correctly noted that the motion was being filed as to all five counts of Plaintiff's petition.

**3.** Defendants also filed counterclaims against Plaintiff for conversion, but dismissed them after the trial court's summary judgment order.

Church, and based on loans and investment certificates alleged to be owed by the Church. Defendants moved for summary judgment on Count II because Plaintiff had no standing to pursue recovery on behalf of Rev. White's estate. Defendants also argued that Count II, to the extent it sought recovery on loans and investment certificates, was barred by the applicable statute of limitations, and specifically sections 516.110 and 516.120. The trial court granted summary judgment on Count II because Plaintiff lacked standing to assert claims belonging to Rev. White's estate, and because all claims seeking repayment of loans or investment certificates were barred by the applicable statute of limitations.

Count III asserted a claim for breach of contract based on alleged employment contracts Plaintiff and Rev. White had with the Church. Count III also asserted a claim for breach of contract based on unpaid loans and investment certificates. Defendants moved for summary judgment on Count III because Plaintiff did not have standing to pursue contract claims on behalf of Rev. White's estate; Plaintiff could not prove a written employment contract existed between she and the Church, or Rev. White and the Church; all loans and investment certificates ever extended by or issued to Plaintiff and Rev. White had been repaid; and Plaintiff's effort to recover on the loans and investment certificates was barred by the applicable statute of limitations. The trial court granted summary judgment on Count III because Plaintiff lacked standing to assert claims on behalf of Rev. White's estate. The trial court also granted summary judgment on Count III because Plaintiff's attempt to recover on the loans and investment certificates was barred by the statute of limitations. Finally, the trial court also granted summary judgment on Count III because there were no genuine issues of material fact in dispute that Plaintiff could not establish the existence of employment contracts between Plaintiff and the Church and Rev. White and the Church, or that Plaintiff had not been paid for work performed for the Church.

Count IV of the petition alleged that the Church failed to produce corporate documents sought pursuant to section 355.826. Defendants moved for summary judgment, arguing that Plaintiff was not a member of the Church at the time of her request and thus had no standing to assert a claim pursuant to section 355.826. The trial court granted summary judgment on Count IV because there was no genuine issue of material fact that Plaintiff was not a member of the Church at the time of her request. Specifically, the trial court found that Plaintiff had not refuted in the manner required by Rule 74.04 the assertion in Defendant Strickland's affidavit that Plaintiff terminated her membership seven months before requesting records.

Count V of the petition alleged that the Church committed an *ultra vires* act because it did not follow its bylaws when selecting a new pastor. Defendants moved for summary judgment on Count V on the basis that Plaintiff was not a member of the Church and thus lacked standing under section 355.141.2 to challenge the Church's power to act. As with Count IV, the trial court granted summary judgment on Count V because there was no genuine issue of material fact in dispute that Plaintiff was not a member of the Church.

Plaintiff asserts five points on appeal. In Point One, Plaintiff claims that the trial court erred in granting summary judgment on her claims of unjust enrichment and breach of contract (Counts II and III) for lack of standing because Plaintiff had legally protectable interests in the property she sought to recover pursuant to those

claims. In Point Two, Plaintiff argues that it was error to grant summary judgment on her claims involving a violation of section 355.826 and an *ultra vires* action (Counts IV and V) because whether she was a member of the Church is a disputed fact. In Point Three, Plaintiff argues that the trial court erred in granting summary judgment on Plaintiff's claim for conversion (Count I) because Plaintiff sufficiently established a right to possession of the converted property. In Point Four, Plaintiff argues that the trial court erred in granting summary judgment on her claims for recovery of loans and investment certificates (Counts II and III) because Defendants' custom and practice delayed the accrual of her causes of action, and thus the running of the statute of limitations. In Point Five, Plaintiff argues that the trial court erred in finding that there were no material facts in dispute as to Plaintiff's inability to establish the existence of employment contracts between she and the Church and Rev. White and the Church (Count III). We address Points One and Three together, and review the remaining points separately.

### Points One and Three

◼ Points One and Three challenge the grant of summary judgment based on Plaintiff's lack of standing to assert claims to recover property belonging to, or amounts owed to, Rev. White. It is uncontested that Rev. White died intestate in December 2012, leaving behind multiple surviving children in addition to Plaintiff, his surviving spouse. Though Plaintiff's petition alleged that Plaintiff was the "rightful heir" of Rev. White, it is uncontested that at the time Plaintiff's petition was filed, and at the time summary judgment was entered, no probate estate had been opened for Rev. White, and no determination of heirship had been made by the probate court. Thus, Plaintiff was neither the executor nor the personal representative of the estate of Rev. White, nor the determined rightful heir of all or any part of the intestate estate of Rev. White. The trial court granted summary judgment on Counts I, II, and III to the extent those counts sought to recover property of, or amounts owed to, Rev. White because Plaintiff lacked standing to assert those claims. The trial court did not err in doing so.

◼ Parties seeking relief "bear the burden of establishing that they have standing." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). Generally, under section 473.270, "[e]xecutors and administrators shall collect all money and debts of every kind due to the decedent, ... and shall commence and prosecute all actions which may be maintained and are necessary in the course of his administration." Section 473.270. As for actions based on wrongs done to property, "[i]f the person whose property or interest therein is injured or dead, the action survives and may be brought against the wrongdoer by the person appointed as fiduciary for the estate of the deceased person." Section 537.010; *see also Niederberg v. Golluber*, 162 S.W.2d 592, 597 (Mo. 1942) ("The right to recover [for wrongful conversion] is vested by statute in the administrator.").

◼ Absent an estate administration, a person may bring a claim as a "judicially determined heir to recover a debt formerly owed to the decedent." *Heidbreder v. Tambke*, 284 S.W.3d 740, 745 (Mo. App. W.D. 2009). Pursuant to section 473.663, "an action for determination of the heirs of a decedent who has died leaving property, and the extent of their interests therein, may be brought by any person having an interest in the property if no administration was commenced on the decedent's estate within a year of death and if no will

was presented for probate within that period." *Heidbreder*, 284 S.W.3d at 743. In other words, "any heirs asserting inheritance of property from the decedent may apply at any time after that first year for the formal recognition of ownership of the property pursuant to 473.663." *Id.* This includes petitioning for the formal recognition of "ownership of a 'chose in action' (a litigation claim) formerly belonging to the deceased." *Id.* at 745. Therefore, it follows that "[i]f a person has been declared pursuant to section 473.663 to have an ownership interest in a chose of action as an heir of the deceased, it would seem logical that the declared owner should be entitled to pursue it and recover it." *Id.* (finding that parties had a right to pursue collection of debt owed to the decedent because they had obtained a judicial determination of heirship to the property under section 473.663).

Because it is uncontested that an estate administration has never been commenced for Rev. White, and that Plaintiff has not been judicially determined to be Rev. White's heir as to any particular property or chose in action, Plaintiff lacked standing to pursue the claims asserted in Counts I, II, and III of the petition insofar as they sought to recover property belonging to, or amounts owed to, Rev. White. Although Plaintiff alleges that she filed a petition requesting a determination of heirship pursuant to section 473.663, Plaintiff admits that a determination of heirship had not yet been made at the time summary judgment was entered.[4] *See also A.H. v. St. Louis Cty.*, No. 4:14-CV-2069 (CEJ), 2015 WL 8313680, at *2 (E.D. Mo. Dec. 9, 2015) (distinguishing from *Heidbreder* to find a lack of standing where "plaintiffs do not allege that they in fact have been

judicially determined to be heirs of decedent's estate ... [but] only allege they have filed a pending petition for determination of heirship pursuant to section 473.663").

The trial court properly granted summary judgment on Count I (conversion) based on alleged personal and intellectual property belonging to Rev. White and in the Church's possession. The trial court properly granted summary judgment on Counts II and III (unjust enrichment and breach of contract) insofar as said counts alleged a right to recover for loans represented by checks written from Rev. White's individual accounts, for investment certificates held in Rev. White's name, and for Rev. White's interests in an alleged employment contract with the Church.

Points One and Three are denied.

### Point Two

Point Two challenges the trial court's grant of summary judgment on Counts IV and V of the petition because Plaintiff's status as a member of the Church remained a genuine issue of fact in dispute.

Count IV alleged that the Church failed to provide records upon Plaintiff's request as required by section 355.826, which provides, in relevant part, in addressing nonprofit corporations, as follows:

> [A] member ... is entitled to inspect and copy, ... at a reasonable time and location specified by the corporation, any of the records of the corporation required by this act if the member or resident gives the corporation written notice or a written demand at least five business days before the date on which

---

4. On July 22, 2016, the probate court dismissed the petition due to insufficient evidence concerning heirs and assets.

the member ... wishes to inspect and copy.

Section 355.826.1. Count V of the petition alleged that the Church committed an *ultra vires* act by hiring a pastor in a manner that did not comply with the Church's bylaws. Such a claim may only be asserted against a nonprofit corporation in the manner provided by section 355.141, which provides, in pertinent part, as follows:

1. Except as provided in subsection 2 of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

2. A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceeding may be brought by ... a member or members in a derivative proceeding.

Thus, relevant to this appeal, Plaintiff's authority to assert claims pursuant to either section 355.826.1 or 355.141.2 depends on whether Plaintiff was a "member" of the Church.

As used in chapter 355, the term 'member' is defined as "any person or persons who on more than one occasion, pursuant to a provision of a corporation's articles or bylaws, have the right to vote for the election of a director or directors." Section 355.066(21). This definition is "without regard to what a person is called in the articles or bylaws." *Id.* It is uncontested that Plaintiff was at one time a member of the Church. In fact, the Church alleged in its statement of uncontroverted facts that "Plaintiff was a member of the Church from 1968 to January, 2013." The Church attached the affidavit of Carlton Strickland (one of the Defendants) in support of this fact, which referred to a July 26, 2013 letter sent to Plaintiff's attorney in response to her request to review Church documents. The letter stated that Plaintiff was not entitled to inspect documents because she was no longer a member of the Church. Strickland's affidavit specifically attested that Plaintiff "withdrew as a member seven (7) months earlier."

In response, Plaintiff denied the Church's uncontroverted fact suggesting her membership with the Church ended in January, 2013. Plaintiff cited to her own affidavit, which attested "I was a member of the Church at the time I sought to review the Church's records. I never withdrew my membership from the Church." Plaintiff also cited to the deposition of Ebbie Stanley (one of the Defendants) who testified that Plaintiff remained a member of the Church as of at least October 6, 2015, the date of his deposition.

The trial court found that there was no genuine issue of material fact in dispute with respect to Plaintiff's status as a member of the Church because Plaintiff failed to refute Strickland's affidavit. This conclusion is not supported by the summary judgment record, as explained, above.

Furthermore, the Church bylaws, which were also a part of the summary judgment record, provide for notice and a hearing before the Church may terminate membership, and indicate that a member may terminate his or her rights upon request. The Church has not alleged with any specificity the manner in which Plaintiff requested that her rights as a member be terminated. Instead, we are left with the Church's nonspecific assertion that Plaintiff withdrew as a member, and the competing denial of that assertion by Plaintiff, arguably supported by Stanley's deposition.

A genuine issue of material fact remains in dispute regarding Plaintiff's status as a member of the Church at the time she requested to inspect Church documents, and at the time she filed her petition alleg-

ing an *ultra vires* act. It was error to grant summary judgment on Counts IV and V of Plaintiff's Petition.

Point Two is granted.

### Point Four

■ Point Four claims that it was error to grant summary judgment on all claims which sought payment on loans and investment certificates based on the statute of limitations because Defendants had a custom and practice of repaying investment certificates and loans whenever they were presented, no matter the due date.

Counts II and III of the petition asserted claims for unjust enrichment and breach of contract, and sought payment of outstanding loans and investment certificates. Specifically, Plaintiff sought payment of: (i) $362,054.04 for investment certificates periodically issued by the Church to Rev. White individually, and/or to Rev. White and Plaintiff jointly, from February, 1963 through July 2000 (including interest calculated at various rates between 4% and 12%); (ii) loans made to the Church by Rev. White and Plaintiff to aid in the Church's educational building program in the collective amount of $69,090, as reflected by simple ledger entries dated from November 1981 through July 1982; and (iii) loans made to the Church to aid in the construction of a gymnasium in the total amount of $15,000, evidenced by four checks written by Rev. White to the Church in August and November 2000. In addition, during the summary judgment proceedings, Plaintiff also demanded payment of two "shareholder certificates" in the total amount of $70 that were issued to Plaintiff individually in October 1971 and June 1972.

Defendants alleged that all of the loans and investment certificates had been paid, and that in any event, Plaintiff's claims to recover payment on the loans and investment certificates were barred by the statute of limitations, specifically sections 516.110(1) and 516.120(1).[5] Section 516.110(1) states that "[a]n action upon any writing, whether sealed or unsealed, for the payment of money" shall commence within ten years after the cause of action accrues. Section 516.120(1) states that the limitation period is five years for "[a]ll actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110."

■ "A cause of action accrues, and the limitation period begins to run, when the right to sue arises." *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 710 (Mo. banc 2015). When a payment obligation has a specific due date, the cause of action accrues *on that date. Harms v. Harms*, 496 S.W.3d 534, 537-39 (Mo. App. W.D. 2016) (finding that a cause of action on a promissory note accrued under section 516.110 on the note's stated maturity date). On the other hand, obligations that are payable on demand "are *payable on the date of execution* and no demand is necessary to start the statute of limitations running." *In re Estate of Whitehead*, 895 S.W.2d 129, 131 (Mo. App. S.D. 1995) (emphasis added); *see also Panettiere v. Panettiere*, 945 S.W.2d 533, 541-42 (Mo. App. W.D. 1997) (holding that the ten-year statute of limitations had run on a demand note after holder had done nothing to collect it); *In re Estate of Markley*, 922 S.W.2d 87, 94 (Mo. App. W.D. 1996) (holding that the statute of limitations had run on a loan where both the five-year and ten-year limitation period had elapsed "since the loans were incurred").

---

**5.** We remind that as to all loans and investment certificates owed solely to Rev. White, the trial court found that Plaintiff had no standing to pursue payment.

Here, each investment certificate issued to Rev. White individually or to Rev. White and Plaintiff, jointly, provided on its face a due date of either two years or three years after the certificate's issuance date. The *latest* issued investment certificate was dated July 3, 2000, and expressed a due date of three years, meaning it came due on July 3, 2003. All other investment certificates came due before that date, with some due as early as 1965. The two shareholder certificates issued to Plaintiff expressed that they could be redeemed one year after issuance, rendering the latest issued certificate due in June 1973. The ledger entries upon which Plaintiff relies to allege unpaid loans noted the name of the contributor, and the date and amount contributed. The last such ledger entry for Rev. White and Plaintiff is dated in September 1982. The ledger entries express no promise to repay, and no due date, rendering the obligation to repay a demand obligation that came due at the time of the contribution. The checks issued by Rev. White and/or Plaintiff to make contributions to the Church similarly include no repayment terms, rendering the obligation to repay a demand obligation that came due at the time the checks were written. The last check was dated in November 2000.

The trial court applied sections 516.110(1) and 516.120(1) to these uncontested facts, and concluded that Plaintiff's claims based on the investment certificates were barred by the statute of limitations because more than ten years had elapsed since each certificate came due by its terms; that Plaintiff's claims based on the ledger entries were barred by the statute of limitations because more than thirty-one years passed without Plaintiff making a demand for repayment; and that Plaintiff's claims based on the checks were barred by the statute of limitations because no demand for repayment was made for at least twelve years.

Plaintiff challenges these conclusions, but only to argue that her cause of action on the loans and investment certificates did not accrue until she made demand for payment after Rev. White's death. Plaintiff notes that pursuant to section 516.100, a cause of action "shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Plaintiff argues that the Church's demonstrated custom and practice of agreeing to repay loans and investment certificates upon demand, regardless of their age, means that her damages were not sustained, and were not capable of ascertainment, until she made demand for payment.

▇▇ Plaintiff cites no authority for the proposition that a cause of action for the repayment of money does not accrue pursuant to section 516.100 until demand for payment is made based on a custom or practice of issuing payment well after the statute of limitations would otherwise have run. And Plaintiff cites no authority for the proposition that a custom and practice of honoring a payment instrument, regardless how long it has been due, modifies the point at which damages are sustained and capable of ascertainment for purposes of section 516.100. "Rule 84.04(d) requires that an Appellant provide appropriate citation to authority in support of his contentions. If no authority exists on the issue, an explanation for the absence of authority is required. If no explanation is given, we may consider the point to be abandoned." *Rios v. State*, 368 S.W.3d 301, 312 (Mo. App. W.D. 2012) (quoting *Roberts v. State*, 356 S.W.3d 196, 205 (Mo. App. W.D. 2011)). We nonetheless reject Plaintiff's unsubstantiated argument, noting that to

conclude otherwise would vitiate the plain language of sections 516.110(1) and 516.120(1) and decisional law holding that a cause of action accrues on a payment instrument on its specified due date, or upon execution if there is no specified due date.

■ Plaintiff does argue that section 400.3-304(a) describes the due date for payment instruments based on "usage of the trade," requiring us to consider the Church's custom and practice in determining when the loans and investment certificates came due. We disagree. Section 400.3-304(a) does address the method for determining when a demand instrument is overdue, and includes as one option consideration of "the nature of the instrument and usage of the trade." Section 400.3-304(a)(3). However, as a provision of the Uniform Commercial Code, section 400.3-304 only applies to negotiable instruments. "To be a negotiable instrument, [a] writing must: (1) be signed by the obligor; (2) contain an unconditional promise to pay a fixed amount of money; (3) contain no other promise, order, or obligation; (4) be payable on demand or at a definite time; and (5) be payable to order or bearer." *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 668 (Mo. App. W.D. 2014) (citing sections 400.3-401; 400.3-104(a)(1)-(3)). The loans evidenced by ledger entries and by checks issued to the Church, though demand instruments (as they express no due date), plainly fail to qualify as negotiable instruments. Among other things, the ledger entries and checks are not signed by the Church (the alleged obligor), and contain no language that can be construed as an unconditional promise by the Church to pay. Section 400.3-304(a) has no application to the ledger or check loans Plaintiff seeks to recover.

Though the investment certificates Plaintiff seeks to recover do appear to qualify as negotiable instruments under the Uniform Commercial Code, by their terms, they each express a due date. Thus, section 400.3-304(a), which addresses when demand instruments are deemed overdue, is of no import. Instead, section 400.3-304(b) applies. Applicable to this case, section 400.3-304(b) provides that "[w]ith respect to an instrument payable at a definite time the following rules apply: . . . (2) If the principle is not payable in installments and the due date has not been accelerated, the instrument becomes overdue on the day after the due date." [6] No provision is made to modify the due date of an instrument payable on a definite date based on custom and practice.

The Uniform Commercial Code does not alter when Plaintiff's cause of action to demand payment on the loans or investment certificates accrued, and does not alter the application of sections 516.110(1) and/or 516.120(1) to defeat Plaintiff's claims for payment.[7] The trial court prop-

---

6. Plaintiff does not argue that the ten-year statute of limitations set forth in section 516.110(1) did not apply to the investment certificates because they are negotiable instruments. However, even had Plaintiff so argued, section 400.3-118, which addresses the statute of limitations for negotiable instruments, also imposes a ten-year limitation period. *See* section 400.3-118(a)-(b); *see also City of Washington v. Warren Cty.*, 899 S.W.2d 863, 868 (Mo. banc 1995) ("An order of summary judgment will not be set aside on review if supportable on any theory. The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions.") (citation omitted).

7. Although the trial court discussed section 400.3-304 in its judgment as if it were relevant to the statute of limitations analysis, our review of a grant of summary judgment is *de novo*, and therefore, "the trial court's order may be affirmed in [an appellate court] on an entirely different basis than that proposed at trial, and [the appellate court] will affirm the

erly granted summary judgment on Counts II and III of the petition to the extent each sought to recover payment on loans and investment certificates because the claims are barred by the statute of limitations.

Point Four is denied.

## Point Five

■ Point Five claims it was error to grant summary judgment on Count III of Plaintiff's petition for breach of contract because "there were sufficient disputed facts to prevent summary judgment."

Plaintiff's point relied on is legally deficient. It fails to "[e]xplain in summary fashion why, in the context of the case," Plaintiff's claim of legal error supports reversal. Rule 84.04(d)(1)(C). Count III of the petition alleges breach of multiple contracts, including the loans and investment certificates, and alleged employment contracts between Plaintiff and the Church and Rev. White and the Church. We have no sense from Plaintiff's point on appeal which contract she is referring to, or which fact or facts in dispute she claims precluded the entry of summary judgment. Plaintiff's point preserves nothing for our review. *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005) ("A point relied on written contrary to the mandatory requirements of Rule 84.04(d), which cannot be comprehended without resorting to other portions of the brief, preserves nothing for appellate review.") (quoting *State v. Dodd*, 10 S.W.3d 546, 556 (Mo. App. W.D. 1999)).

Affording *ex gratia* review to Plaintiff's fifth point on appeal, as framed by the multiple issues raised in the argument portion of Plaintiff's Brief, we nonetheless find the point is without merit. Plaintiff argues

grant of summary judgment under any appropriate theory." *Turner v. Sch. Dist. of Clayton*,

that there were material facts in dispute regarding the Church's obligations to Rev. White to transfer title to a car and to reimburse his credit card expenditures and funeral expenses. We have already explained that Plaintiff has no standing to assert claims to recover amounts alleged to be owed to Rev. White, rendering it unnecessary to further address these subjects.

Plaintiff also argues that she was the intended beneficiary of a life insurance policy in the alleged amount of between $50,000 and $100,000, which the Church was obligated to acquire for Rev. White pursuant to his employment contract. However, Plaintiff admitted the Church's uncontroverted facts which alleged that there was no written employment agreement between Rev. White and the Church. And she admitted the Church's uncontroverted facts that although Rev. White had a "lifetime call" certificate from the Church, a lifetime call does not set out salaries, insurance or retirement benefits. More to the point, Plaintiff's petition did not allege that Plaintiff was supposed to have been a beneficiary on a life insurance policy acquired by the Church for Rev. White. Plaintiff's bare assertion to this effect, which appears first to have been raised in the affidavit she filed in response to the Defendants' summary judgment motion, is not sufficient to create a genuine issue of material fact in dispute preventing the entry of judgment as a matter of law on Plaintiff's claim for recovery of life insurance benefits.

■ Plaintiff also argues that there were material facts in dispute regarding the Church's obligations to pay her for services rendered pursuant to an employment contract she had with the Church.

318 S.W.3d 660, 664 (Mo. banc 2010).

Plaintiff's petition alleges that she was not paid for clerical services provided to the Church from December 25, 2012 through March 2013. At the same time, Plaintiff's petition alleges that "[o]nly days after the death of [Rev. White], the Defendants changed the locks on the Church, [and] never allowed Plaintiff to return to work." In their summary judgment pleadings, Defendants alleged that there was no written employment agreement between Plaintiff and the Church. Plaintiff admitted this uncontroverted fact. Defendants also alleged that "Plaintiff, as an employee, failed to return to work after receiving her check on January 6, 2013." Though Plaintiff denied this uncontroverted fact, she referenced only her affidavit to support the denial. In her affidavit, Plaintiff says nothing about her employment with the Church, nothing about whether her employment continued after the death of Rev. White, and nothing about the continued services, if any, she provided to the Church after receiving a paycheck on January 6, 2013. Plaintiff's failure to controvert the assertion that Plaintiff failed to return to work after January 6, 2013 results in Plaintiff's admission of the assertion. Rule 74.04(c)(2) ("A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.").

Plaintiff did include an additional uncontroverted fact in her response to Defendants' motion for summary judgment which alleged that she worked for at least a month after Rev. White's death, citing to the following portion of Stanley's deposition testimony:

Q. Now, when did [Plaintiff] stop working at [the Church]?

A. I don't know.

Q. Did she work after [Rev. White's] death?

A. For a little bit, but I don't—it wasn't too long.

Q. About how long would you say?

. . . .

A. I don't know how long she worked.

Q. Was it a month?

A. Oh, it was longer than that, you know, but I couldn't say exactly how long it was.

Q. But you do know she worked longer than a month after his death?

A. Yeah, she was there longer than a month.

This testimony is not inconsistent with Defendants' assertion (which Plaintiff is deemed to have admitted) that Plaintiff did not work after January 6, 2013. Plaintiff failed to satisfy her burden under Rule 74.04(c)(2) to demonstrate a genuine issue of material fact in dispute concerning whether she is owed for employment services. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 378 (" 'Genuine' implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities.").

The trial court did not error in granting summary judgment on Plaintiff's claims of breach of employment contracts asserted in Count III of the petition.

Point Five is denied.

### Conclusion

The trial court's grant of summary judgment is affirmed in part and reversed in part. The grant of summary judgment is affirmed on Plaintiff's claims for conversion (Count I), unjust enrichment (Count II), and breach of contract (Count III). The grant of summary judgment is reversed on Plaintiff's claims of a failure to produce records for inspection (Count IV) and of an *ultra vires* act (Count V). This matter is remanded to the trial court for

further proceedings consistent with this opinion.

All concur