# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1282

_____

Lipton-U. City, LLC,      *
     *
         Appellee,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    Eastern District of Missouri.
Shurgard Storage Centers, Inc.,      *
     *
         Appellant.      *

_____

Submitted: June 15, 2006
Filed: July 31, 2006

_____

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Lipton-U. City, LLC ("Lipton") brought suit against Shurgard Storage Centers, Inc. ("Shurgard"), seeking to compel Shurgard to participate in arbitration pursuant to the parties' lease agreement. The district court granted Lipton's motion for summary judgment, finding that "Lipton has fulfilled the conditions precedent to requiring Shurgard to submit their dispute to binding arbitration." *Lipton-U. City, LLC v. Shurgard Storage Centers, Inc.*, No. 05-1265, slip op. at 7 (E.D. Mo. Dec. 20, 2005). For the reasons stated below, we reverse.

## I. *Facts*

In 1999, Lipton and Shurgard entered into a lease agreement with a purchase option for a large self-storage facility, which Shurgard owns and Lipton operates. Shurgard subsequently discovered a major problem with the purchase option price term in the agreement when Lipton attempted to exercise it. Shurgard filed suit against Lipton, seeking reformation or rescission of the purchase option price formula in the lease. The district court entered judgment in Shurgard's favor and rescinded the purchase option price formula, holding that (1) Shurgard never agreed to sell its property for half its value; (2) Lipton knew or should have known this despite how the lease was drafted; and (3) requiring Shurgard to sell the property for half its price would be unconscionable. This court affirmed in *Shurgard Storage Centers v. Lipton-U. City, LLC*, 394 F.3d 1041, 1045 (8th Cir. 2005), holding that "Lipton and Shurgard were not of the same mind regarding the terms of the agreement, as Lipton thought the contract was based on unannualized net-operating income and Shurgard thought that the contract was based on annualized net-operating income"

Following remand, judgment was entered rescinding the price formula in the purchase option section of the lease agreement. However, Lipton continued its efforts to exercise the purchase option for the property by invoking the purchase option's arbitration clause.[1] Lipton contended that the purchase option remained enforceable

___

[1]Section 2.1 of the Lease Agreement – Grant of Purchase Option – states in relevant part:

> Landlord grants Tenant an option to purchase the Property (the "Purchase Option") on the terms and conditions set forth herein. *Provided*, that the parties agree to negotiate in good faith any additional terms or conditions not contemplated by this Section. In the event that the parties cannot come to agreement on any such additional terms or conditions within thirty (30) business days of Tenant's exercise of the Purchase Option, either party may notify the other that the matter will be

notwithstanding the absence of an agreed upon price. Lipton made various purchase price offers for the property, but Shurgard declined to sell at the offered prices and refused to participate in arbitration. Lipton then filed suit in district court, seeking to require Shurgard to arbitrate the contract price term that was previously invalidated. The district court granted Lipton's motion for summary judgment, compelling Shurgard to participate in arbitration. Shurgard appeals.

## II. *Discussion*

Shurgard argues three points on appeal. First, Shurgard argues that the district court erred in requiring it to arbitrate a price under Section 2 of the lease agreement because Shurgard and Lipton never agreed to arbitrate the price for the purchase option. Shurgard points out that the lease agreement for the property does not contain a general arbitration clause covering all disputes. Instead, it includes a very narrow provision in the purchase option, allowing a panel of three real estate experts to address nothing more than disputes over additional terms and conditions for the sale of the property that were not already contemplated by the parties in Section 2 of the lease. Because the price formula was explicitly addressed in Section 2.4 of the lease when Shurgard and Lipton included the provision for three real estate experts, Shurgard maintains that the parties never intended to arbitrate price, and the lease did not make price arbitrable when it was signed. Shurgard submits that a court cannot compel arbitration of an issue the parties did not agree to arbitrate.

---

submitted for final resolution to a panel of three real estate experts, each of whom shall be experienced in negotiating agreements for the purchase and sale of the type of property subject to this Lease. Landlord and Tenant shall each select and fully compensate one of these real estate experts and the third shall be selected by the other two and compensated in equal shares by Landlord and Tenant. The panel's decision will be binding on the parties without further rights of appeal. (Emphasis in original).

-3-

Second, Shurgard avers that a contract for the sale of real estate is unenforceable under Missouri law without an agreed upon price or method of determining a price. Given the invalidation of the existing method of determining price, the contract-for-sale lacks an agreed upon price. Shurgard contends that the option is therefore unenforceable and the arbitration clause inapplicable.

Third, Shurgard argues that even if the option were still enforceable, the option provision requires that the parties negotiate in good faith before resorting to resolution by a panel of three real estate experts. Shurgard claims that Lipton has not met this prerequisite because it has not negotiated in good faith. Shurgard states that Lipton offered it $185,895 to buy the property after the district court had already rejected its half price offer of $2,918,102 as unconscionable. For these reasons, Shurgard urges that this court reverse the judgment of the district court.

"We review de novo a district court decision granting a motion for summary judgment, using the same standard as the district court and construing the record in the light most favorable to [] the nonmoving party. Summary judgment is appropriate only if the evidence establishes that there exists no genuine issue of material fact and that the moving party [] is entitled to judgment as a matter of law." *Johnson v. AT&T Corp.*, 422 F.3d 756, 760 (8th Cir. 2005) (internal citation omitted).

Upon review, we find that the district court erred in compelling Shurgard to participate in arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotations omitted). "[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court *on the basis of the contract entered into by the parties*." *Id.* at 649 (emphasis added). "When deciding whether to compel arbitration, this court applies a two part test: 'we

must first consider whether a valid agreement to arbitrate exists. If a valid agreement exists, we then consider the scope of the agreement.'" *United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (quoting *United Steelworkers of Am., AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)). Further, the court must make a threshold inquiry into whether the contract's arbitration provisions arguably cover the dispute at hand. *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980).

Here, there is no dispute that a valid agreement to arbitrate exists. In fact, the language of the arbitration clause contained in Section 2.1 of the lease agreement clearly states the following:

> In the event that the parties cannot come to agreement on any such additional terms or conditions within thirty (30) business days of Tenant's exercise of the Purchase Option, either party may notify the other that the matter will be submitted for final resolution to a panel of three real estate experts, each of whom shall be experienced in negotiating agreements for the purchase and sale of the type of property subject to this lease.

The crucial question is whether the scope of that arbitration agreement includes the price term of the option contract. The beginning sentence of Section 2.1 of the lease agreement states: "Landlord grants Tenant an option to purchase the Property (the "Purchase Option") on the terms and conditions set forth herein." The term "herein" refers to the remainder of Section 2, which sets forth the negotiated terms and conditions applying to the purchase option. One of these terms and conditions was the method of determining the purchase price, which was contained in Section 2.4. However, the district court invalidated that provision. On appeal, we upheld the district court's ruling that there was no meeting of the minds and enforcement of the provision would be unconscionable, making rescission an appropriate remedy.

Upon de novo review, we find that the parties agreed to arbitrate only any *additional* terms and conditions. The arbitration clause thus served to supply terms not contemplated by the agreement. It does not serve, however, as a means for supplying an essential term, such as price, that the parties fully contemplated and intended to be determined by a separate, express contractual provision, i.e., Section 2.4. Consequently, the scope of the agreement to arbitrate did not include arbitration of the price term under the purchase option section of the lease agreement.

In addition, the fact that the price term was later rescinded does not now make the price term an additional term under the contract. As previously indicated, we determine the scope of the arbitration clause "on the basis of the contract entered into by the parties." *Communications Workers of Am.*, 475 U.S. at 649. The original contract did not contemplate arbitration of the price term, which was already set forth in Section 2.4. Thus, the court cannot now consider the price term an additional term covered by the arbitration clause. Further, if the price term, after rescission, is treated as if it was never contemplated, then the purchase option, on its face, fails to set forth the material and essential terms of a real estate contract, making it unenforceable. *See Williams v. Agribank, FCB*, 972 F.2d 962, 966 (8th Cir. 1992) ("Rescission of a contract extinguishes it as effectually as if it had never been made . . ." (internal quotations omitted)). Under Missouri law, to have a valid real estate sale contract, that contract must set forth "the stipulation of a price, or a method of determining it . . ." *Barling v. Horn*, 296 S.W.2d 94, 97 (Mo. 1956). Lipton concedes that there is no stipulation of a price in the contract; however, Lipton argues that there is a method for determining the price in that the contract provides for arbitration of additional terms and conditions of the contract. Notably, Lipton cites no case law, controlling or otherwise, suggesting that arbitration of the sale price at some later date is an accepted method of determining price in a real estate contract. We construe the language "a method for determining the price" as the precise purpose for Section 2.4 of the lease agreement before it was rescinded, a formula upon which the parties were to calculate

-6-

a purchase price. After the "method for determining the price" was eliminated from the contract, there was no longer an enforceable purchase option, as price is an essential and material term in a real estate contract.

Clearly, under the original contract, neither party contemplated arbitrating a term as crucial as price, which is why the parties attempted to set forth a provision in the contract to calculate a reasonable market price. Accordingly, we find that the district court erred in compelling Shurgard to arbitrate the price term under Section 2 of the lease agreement. Because we resolve the case on the stated grounds, there is no need to address whether the parties negotiated in good faith.

For the reasons stated above, the judgment of the district court is reversed.

_____