In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

SHIRLEY R. EBERT, ET AL., ) No. ED108195
 )
 Respondents/Cross-Appellants, ) Appeal from the Circuit Court
 ) of Jefferson County
vs. )
 )
MARK R. EBERT AND CINDY K. EBERT, ) Honorable Troy A. Cardona
 )
 Appellants/Cross-Respondents. ) FILED: June 8, 2021

 Introduction

 This appeal involves various real estate transactions and financial loans made between

family members over a period of time. Mark R. (“Mark”) and Cindy K. Ebert (“Cindy”)1 appeal

from the trial court’s judgment following a bench trial arising out of an action by Shirley R.

Ebert, individually and as Trustee of the Shirley R. Ebert Revocable Living Trust dated

November 20, 2017 (collectively, “Shirley”), to resolve claims surrounding a real estate contract

for the purchase of family property and repayment of personal loans. Mark and Cindy raise three

points on appeal. Point One alleges the trial court erred in failing to apply a five-year statute of

limitations to bar Shirley’s breach of contract claims to recover on two loans (the “Flight School

Loan” and the “American Heritage Loan,” respectively). Point Two claims the trial court erred

in holding Cindy liable on any loan-related claims because she was not a party to any loan

1
 In their briefs, the parties refer to one another by first names in order to distinguish between the family members.
We intend no familiarity or disrespect in adopting the naming conventions contained within the briefs.
agreement. Point Three contends the trial court erred in finding the 2002 real estate contract (the

“2002 Contract”) unenforceable on the grounds that its terms were neither certain nor capable of

being made certain. In her sole point on cross-appeal, Shirley argues the trial court erred in not

granting an easement by implication because the easement was pleaded and judicially admitted

at trial.

 Because the Flight School Loan ledger reflects a written promise of indebtedness,

bringing it within the ten-year statute of limitations, the trial court did not err, and we deny Point

One as to the Flight School Loan. However, the American Heritage Loan calendar entry does

not reflect a written promise of indebtedness. For that reason, the trial court erred in not

applying the five-year statute of limitations, and we grant Point One as to the American Heritage

Loan. Because no legal reason justified holding Cindy liable on the Flight School Loan, we

grant Point Two. Because the 2002 Contract did not set forth a certain or sufficiently

determinable price term, the contract is unenforceable, and we deny Point Three. Because the

record shows the weight of the evidence established an easement by implication, the trial court

erred in not granting the easement in Count I, and we grant Shirley’s cross-appeal. Accordingly,

we reverse the judgment in part and remand for the trial court to enter judgment consistent with

this opinion.

 Factual and Procedural History

 Shirley is Mark’s mother. Cindy is Mark’s wife and Shirley’s daughter-in-law. Mark

and Cindy sold Shirley a parcel of approximately thirty-five acres of land (the “Property”)

located on their property for $56,000.00. This sale was memorialized in a real estate contract

(the “1997 Contract”).

 2
 The 1997 Contract provided for an easement of a roadway and bridge (the “Roadway”)

for physical and utility access:

 [Shirley] has full and unrestricted use of [the Roadway] for access and utility
 easement[.] [Mark and Cindy] will provide to [Shirley] a full and clear General
 Warranty Deed to said property . . . . [a]long with, in writing, an access and utility
 easement on [the Roadway] for present and all future owners of said [thirty-five]
 acre parcel.”

Mark and Cindy executed a general warranty deed for the Property in 1998. The record suggests

that no easement by title was filed. The parties split the costs of constructing the Roadway in

order to provide access to Shirley’s house across Mark and Cindy’s property. Shirley obtained

financing from a bank and paid Mark and Cindy the $56,000.00 in full for the Property.

 In 2002, Shirley entered into a contract with Mark and Cindy to sell the Property back to

them (the “2002 Contract”). Cindy helped prepare the 2002 Contract. The 2002 Contract

provided that Shirley would resell the Property to Mark and Cindy for $56,000.00 with a caveat

that if Shirley decided to move from the Property, the sale price would be adjusted and finalized

if Shirley built improvements on the Property. Mark would pay for the total value of the

Property, including the value of the improvements. Specifically, the 2002 Contract provides:

“Price of said [P]roperty will be adjusted accordingly if a residence and/or any out buildings are

constructed on said [P]roperty and [Shirley] wishes to move[,]” and “[Mark and Cindy] agree to

pay in full any remaining balance due to [Shirley] if [Shirley] wishes to move from said

residence.” Shirley gave Mark and Cindy a general warranty deed to hold, but not record. The

2002 Contract also arranged for Shirley to help Mark and Cindy finance the repurchase. Mark

and Cindy executed a deed of trust to Shirley for $56,000.00 and began making payments. Later

in 2002, Shirley began to construct a residence on the Property. Over a fifteen-year period, Mark

and Cindy paid Shirley $56,000.00.

 3
 Shirley decided she wanted to move from the Property in 2017. Shirley informed Mark

that the value of the Property with the improvements was assessed at $200,000.00. Mark refused

to pay the additional $144,000.00, the difference between the assessed value with improvements

and the $56,000.00 value of the land. Shirley had not wanted Mark to file the general warranty

deed for the Property, because the 2002 Contract stated that if she built a residence on the

Property, the purchase price would be adjusted accordingly. Despite these terms, in 2017, Mark

filed the general warranty deed conveying the Property from Shirley to himself and Cindy.

 Separate from the real estate transactions, Shirley made two loans to Mark relevant to this

appeal: the Flight School Loan, an $80,500 loan to pay for Mark’s flight school education, and

the American Heritage Loan, a $12,977.56 loan to invest in a foreclosure property. Neither loan

was memorialized in a formal written loan agreement. The record contains writings regarding

the loans in a handwritten organizer kept by Cindy for Mark. The Flight School Loan is denoted

in a ledger specifying the dates and amounts borrowed totaling $80,500.00, beginning April 5,

2010, with Mark and Shirley’s initials, and the amount repaid. The American Heritage Loan is

denoted in a handwritten calendar entry from the same organizer on January 31, 2009, which is

marked: “$12,977.56 American Heritage M.E. S.E.”

 Following a breakdown of the 2002 Contract regarding the repurchase price of the

Property and issues relating to the repayment of the loans, Shirley demanded repayment of the

loans and filed the present legal action in February 2018. The amended petition alleges seven

counts, some against Mark individually and some against Mark and Cindy jointly. Count I

sought an easement by implication for the Roadway described in the 1997 Contract. Count II

sought to clarify contractual ambiguities in the 2002 Contract. Count III raised an action to quiet

title as to the Property. Counts IV, V, and VI alleged claims against Mark for breach of the 2002

 4
Contract and breaches of the loan agreements. In particular, Count V sought repayment of the

American Heritage Loan, and Count VI sought repayment of the Flight School Loan. Finally,

Count VII alleged undue influence and unjust enrichment against Mark and Cindy jointly.

 The case proceeded to trial. Shirley testified about her continuous use of the Roadway

since 1997 and its reasonable necessity to provide her ingress/egress access across Mark and

Cindy’s property to Hardin Road, which was otherwise blocked by a creek. Shirley submitted

into evidence the 1997 Contract discussing the intention to grant an easement for the Roadway,

the survey illustrating the Roadway on the Property, and handwritten ledgers showing payments

for construction of the Roadway. Shirley read the relevant parts of the 1997 Contract that

promised the granting of an easement into evidence. Mark testified that no easement by title was

ever filed, that he was not opposed to Shirley using the road as an easement and did not object

when the trial court indicated that Shirley had an easement and that the issue of the easement was

resolved. The trial court followed Mark’s testimony with the following exchange:

 Trial Court: Let me ask a couple questions to resolve something that’s apparently
 resolved, then, unless his attorney is going to object. Do you have a
 problem with the easement being where the road is now located?
 Mark: No.
 Trial court: So we can resolve that issue.

 Following trial, the trial court issued an Amended Judgment2 primarily in Shirley’s favor.

The Amended Judgment found the 2002 Contract overly ambiguous and therefore void and

unenforceable. The Amended Judgment did not refer to specific counts in the amended petition,

but it awarded monetary judgments related to the Property and the two loans, which will be

2
 Shirley had initially moved to amend the trial court’s judgment, but subsequently withdrew her motion after the
Amended Judgment was issued. The Amended Judgment clarified that all other claims were denied for insufficient
evidence.

 5
detailed in the discussion below. The Amended Judgment found insufficient evidence with

regard to all other claims for relief.

 Mark and Cindy appealed, and Shirley cross-appealed. Shirley has moved to dismiss the

appeal for lack of a final judgment, and the motion was taken with the case.

 Points on Appeal

 Mark and Cindy raise three points on appeal. Point One argues the trial court erred in

granting money judgments on the two loans because the statute of limitations barred Shirley’s

breach of contract claims to recover money on the Flight School Loan in Count VI and the

American Heritage Loan in Count V. Point Two maintains the trial court erred in granting

judgment against Cindy because no substantial evidence supported the judgment. Point Three

contends the trial court erred in declaring the 2002 Contract void and unenforceable because the

terms of the contract were certain or capable of being made certain.

 In her sole point on cross-appeal, Shirley asserts the trial court erred in failing to grant an

easement by implication because she pleaded a claim for such easement in her amended petition

and the easement was judicially admitted at trial.

 Standard of Review

 We review the judgment in a court-tried case for whether the judgment is unsupported by

substantial evidence, is against the weight of evidence, or erroneously declares or misapplies the

law. Koeller v. Malibu Shores Condo. Ass’n, Inc., 602 S.W.3d 283, 286 (Mo. App. S.D. 2020)

(citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)); Dohogne v. Counts, 307 S.W.3d

660, 666 (Mo. App. E.D. 2010) (internal citation omitted) (noting we apply the same standard of

 6
review of actions for declaratory judgment as any other court-tried cases); see also Rule

84.13(d).3

 Under the Murphy v. Carron standard of review, “[w]e review the evidence and its

reasonable inferences in the light most favorable to the judgment and disregard any evidence and

inferences to the contrary.” Parkway Constr. Servs., Inc. v. Blackline LLC, 573 S.W.3d 652,

664 (Mo. App. E.D. 2019) (internal quotation omitted). However, we review de novo any

questions of law that arise, such as whether a statute of limitations applies, without deference to

the trial court. DiGregorio Food Prods., Inc. v. Racanelli, 609 S.W.3d 478, 480 (Mo. banc 2020)

(internal citation omitted); see also Woodson v. Bank of Am., N.A., 602 S.W.3d 316, 323 (Mo.

App. E.D. 2020) (internal citation omitted) (noting “[t]he interpretation of a contract is an issue

of law, which we review de novo”).

 Given that both parties improperly employ the Murphy v. Carron standard, and because

Mark and Cindy suggest we should dismiss Shirley’s cross-appeal for failure to comply with

Rule 84.04 on similar grounds on which they also fail to comply, we find it necessary to

comment on the requirements of the Murphy v. Carron standard in finer detail. See Murphy, 536

S.W.2d at 32.

 Both parties correctly acknowledge that Murphy v. Carron governs our review of a court-

tried case, and we must affirm the trial court’s judgment unless it is not supported by substantial

evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.

See id. However, “each Murphy ground is proved differently from the others and is subject to

different principles and procedures of appellate review.” Koeller, 602 S.W.3d at 287 (internal

quotation omitted). In order to comply with the rules of appellate procedure in Rule 84.04, a

3
 All Rule references are Mo. R. Civ. P. (2020), unless otherwise indicated.

 7
point on appeal must proceed under one of the Murphy v. Carron grounds, each of which

requires a distinct analytical framework. Koeller, 602 S.W.3d at 287 (internal citation omitted);

see Rule 84.04(d)(1) (requiring a point relied on state concisely the legal reasons for the claim of

reversible error), (e) (requiring the argument section set forth the applicable standard of review).

If a point on appeal fails to identify which one of the Murphy v. Carron grounds applies, Rule

84.04 directs us to dismiss the point. Biggs by Next Friend Biggs v. Brinneman, 598 S.W.3d

697, 702 (Mo. App. S.D. 2020) (citing Murphy, 536 S.W.2d at 32).

 A challenge that the trial court’s judgment is not supported by substantial evidence is

distinct and should not be conflated with a challenge that the judgment is against the weight of

the evidence. Koeller, 602 S.W.3d at 287 (internal citation omitted); Biggs, 598 S.W.3d at 702.

Notably, we have repeatedly reminded appellants that weight-of-the-evidence challenges must

adhere to the mandatory analytical framework as set forth in the caselaw. Biggs, 598 S.W.3d at

702 n.8 (citing Houston v. Crider, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010)); see also

O’Gorman & Sandroni, P.C. v. Dodson, 478 S.W.3d 539, 544 (Mo. App. E.D. 2015) (internal

citation omitted).4 Further, “[e]ach of these, in turn, is different from a claim that the trial court

erroneously declared or applied the law.” Koeller, 602 S.W.3d at 287 (internal citation omitted).

Accordingly, just as failing to identify which one of the Murphy v. Carron grounds supports a

claim of reversible error violates Rule 84.04(d)–(e) and warrants dismissal, a single point that

alleges the trial court erred under more than one of the Murphy v. Carron standards raises a

4
 The analytical framework for against-the-weight-of-the-evidence challenges is as follows: “(1) identify the trial
court’s finding he [or she] seeks to challenge as against the weight of the evidence; (2) identify all favorable
evidence submitted during trial that would support that finding; (3) identify evidence contrary to the trial court’s
finding; and (4) explain why, in light of the whole record, the supporting evidence is so lacking in probative value
that the trier of fact should have reached a different conclusion.” O’Gorman & Sandroni, P.C., 478 S.W.3d at 544
(internal citation omitted).

 8
multifarious point that violates Rule 84.04(d)(1) and preserves nothing for review. See Koeller,

602 S.W.3d at 287 (internal citation omitted).

 Discussion

 Preliminarily, we address Shirley’s motion to dismiss the appeal on the grounds that the

Amended Judgment is not a final, appealable judgment. Mark and Cindy did not respond to

Shirley’s motion to dismiss. Shirley alleged the Amended Judgment fails to resolve all matters

because it states: “The [trial] court finds that the $56,000.00 paid by Mark [] and Cindy [] for the

[thirty-six] acres shall be refunded and returned by Shirley [] to them or otherwise credited to

the terms of this judgment below.” (Shirley’s emphasis altered). Shirley reasons that the

emphasized language lacks specificity and leaves undetermined whether and how consideration

should be otherwise credited. Immediately following the challenged language, the trial court

continued:

 The [trial] court finds and orders that $14,000.00 shall [be] paid to Shirley [] by
 Mark and Cindy [] (along with the $56,000.00 credit above), and further finds that
 these amounts totaling $70,000.00, along with the additional $10,000.00 the [trial]
 court finds Mark and Cindy [] have already repaid to Shirley [], shall pay-off any
 and all amounts due on the flight school loan of $80,000.00, which the court finds
 the evidence suggests was a no interest personal loan. The [trial] court finds that
 $12,977.00 shall be paid by Mark and Cindy [] to Shirley [] for the “foreclosure
 property venture.” The [trial] court orders that each party shall be responsible for
 their own costs and attorney fees.

The Amended Judgment thus specifies the amounts owed between the parties. Rather than

making Shirley pay Mark and Cindy $56,000.00, the Amended Judgment simply permits Mark

and Cindy to reduce the payments they owe to Shirley by that amount. We see no ambiguity in

the amounts owed to Shirley. The Amended Judgment resolves all claims of the parties by

denying the remaining claims for insufficient evidence. The trial court’s judgment is a final,

 9
appealable judgment under Rule 74.01(b). See Wilson v. City of St. Louis, 600 S.W.3d 763, 765

(Mo. banc 2020). We deny Shirley’s motion to dismiss the appeal.

I. Point One—Statute of Limitations

 In Point One, Mark and Cindy challenge the trial court’s failure to apply a five-year

statute of limitations to Shirley’s breach of contract claims in Counts V and VI. Shirley counters

that because both loans involved a writing setting forth a promise to pay money, the trial court

properly applied a ten-year statute of limitations.

 Missouri has two statutes of limitations relating generally to contract actions: Section

516.110(1)5 and Section 516.120. Rolwing v. Nestle Holdings, Inc., 437 S.W.3d 180, 182 (Mo.

banc 2014) (internal quotation omitted). Section 516.120(1) provides that “[a]ll actions upon

contracts, obligations or liabilities, express or implied, except those mentioned in [S]ection

516.110(1) . . . must be brought within five years.” Id. (omission in original) (internal quotation

omitted). Section 516.110(1) creates an exception to Section 516.120(1) and provides a ten-year

statute of limitations for “[a]n action upon any writing, whether sealed or unsealed, for the

payment of money or property[.]” See Rolwing, 437 S.W.3d at 182. “[T]he [ten]–year statute of

limitations applies when a plaintiff files suit to enforce a written promise to pay money.” Id. at

183.

 “A cause of action accrues, and the limitation period begins to run, when the right to sue

arises.” White v. Emmanuel Baptist Church, 519 S.W.3d 917, 926 (Mo. App. W.D. 2017)

(quoting Boland v. Saint Luke's Health Sys., Inc., 471 S.W.3d 703, 710 (Mo. banc 2015)).

“When a payment obligation has a specific due date, the cause of action accrues on that date.”

Id. (citing Harms v. Harms, 496 S.W.3d 534, 537–39 (Mo. App. W.D. 2016)). In contrast,

5
 All Section references are to RSMo (2016), unless otherwise indicated.

 10
obligations that are payable on demand “are payable on the date of execution and no demand is

necessary to start the statute of limitations running.” Id. (internal quotation omitted).

 Shirley sent demand letters and filed her claims on the Flight School Loan and the

American Heritage Loan in February 2018. Mark and Cindy maintain that the five-year statute-

of-limitations defense applies to both loans running from the date they were executed. The

Flight School Loan was executed in 2010, and the American Heritage Loan was executed in

2009. The record indicates Shirley first raised the issue of repayment on the American Heritage

Loan in 2017 and made her first demand for repayment in February 2018, both dates of which

would fall outside the five-year statute of limitations but within the ten-year exception if

applicable. See Sections 516.110(1), 516.120; White, 519 S.W.3d at 926 (internal citation

omitted). Regarding the Flight School Loan, Mark repaid $10,000 in January 2014, and then

Shirley mentioned repayment again in 2017 and demanded repayment in February 2018. If the

five-year statute of limitations applies to the Flight School Loan measuring from its 2010

execution, Mark and Cindy contend repayment is barred. See Sections 516.110(1), 516.120;

White, 519 S.W.3d at 926 (internal citation omitted). Shirley alternatively argues that even if the

five-year statute of limitations applied to the Flight School Loan, Mark’s repayment of $10,000

in January 2014 extended the statute of limitations, bringing it within a five-year period with

respect to her February 2018 demand. See, e.g., Anderson v. Stanley, 753 S.W.2d 98, 100 (Mo.

App. E.D. 1988) (internal citation omitted) (noting “[g]enerally, part payment on a debt tolls the

statute of limitations . . . [in that it] acknowledges the existence of the indebtedness and raises an

implied promise to pay the balance”).

 Both loans involve a writing on different pages of the same calendar organizer. The issue

presented on both loans is whether the separate writings reflect a written promise to pay money.

 11
See Rowling, 437 S.W.3d at 183. If so, Section 516.110(1)’s ten-year statute of limitations

applies, and Shirley’s claims were timely filed. See id. If not, Section 516.120(1)’s general five-

year statute of limitations applies, and Shirley’s claims are barred. See DiGregorio Food Prods.,

Inc., 609 S.W.3d at 480–81.

 A. Written Promise to Pay Money

 The party seeking to recover money owed must show there is a writing “for the payment

of money and that the writing contains a promise to pay money, [while] the exact amount to be

paid or other detail of the obligation may be shown by extrinsic evidence.” Rolwing, 437

S.W.3d at 183 (quoting Cmty. Title Co. v. Stewart Title Guar. Co., 977 S.W.2d 501, 502 (Mo.

banc 1998)); see also DiGregorio Food Prods., Inc., 609 S.W.3d at 481 (citing Cmty. Title Co.,

977 S.W.2d at 502) (“[T]he promise to pay money must arise from the writing’s explicit

language; extrinsic evidence cannot supply the promise.”).

 “[T]he essence of a promise to pay money is that it is an acknowledgment of an

indebtedness, an admission of a debt due and unpaid.” DiGregorio Food Prods., Inc., 609

S.W.3d at 481 (quoting Martin v. Potashnick, 217 S.W.2d 379, 381 (Mo. 1949)). “[T]he

language of the writing, by fair implication, must contain the promise to pay money[.]” Id. at

481 (citing Martin, 217 S.W.2d at 381). “Once, by fair implication, the obligation is found, the

exact amount to be paid or other detail of the obligation may be shown by extrinsic evidence.”

Martin, 217 S.W.2d at 381 (internal citation omitted).

 The Supreme Court recently analyzed whether restaurant invoices contained the required

acknowledgment of an indebtedness so as to come within the ten-year exception under Section

516.110(1). See DiGregorio Food Prods., Inc., 609 S.W.3d at 481–82 (finding shipment

invoices prepared by a food-products company signed by a restaurant manager lacked explicit

 12
language evincing the restaurant owner’s acknowledgment of a debt owed and unpaid to the

food-products company). In reaching its conclusion that the writings did not contain the

necessary promise of indebtedness, DiGregorio noted that the invoices contained numerous

specific terms, including the date, order, shipping method, total costs, and payment terms.

However, DiGregorio further noted that:

 [N]one of these terms can be said to be [the respondent’s] acknowledgement of a
 debt or his admission a debt is due and unpaid. The only term on the invoice
 possibly attributable to [the respondent] is the restaurant manager’s signature. The
 invoices are silent, however, as to the significance of the signature. The invoice
 does not contain any language suggesting or implying the signature is [the
 respondent’s] acknowledgement of indebtedness or his admission of a debt due and
 unpaid.

 Furthermore, a comparison of writings this Court has found to contain
 promises to pay money with the signed invoices shows the invoices lack the explicit
 language necessary to support such a promise. In Community Title Co., this Court
 found a promise to pay money in a title insurance underwriting agreement that
 stated in pertinent part, “[Stewart Title] shall . . . compensate [Community Title] as
 follows: Pay [Community Title] annually . . . twenty percent (20%) of the cash
 amount received by [Stewart Title] from such Agents.” 977 S.W.2d at 502.
 In Hughes Development Co., this Court determined a promise to pay money was
 present in a written management service agreement that declared Omega Realty
 Company (“Omega”) would pay Hughes Development Company a percentage of
 the management fees Omega collected from certain apartment owners. 951 S.W.2d
 at 616-17. Additionally, in Mo., Kan., & Tex. Railway Co. v. Am. Surety Co. of
 N.Y., this Court held the [ten]-year statute of limitations applied to a suit on an
 indemnity bond providing in pertinent part, “That we, J.T. Miller and L.G. Graham,
 . . . and American Surety Company of New York, as surety, are indebted to the
 Missouri, Kansas & Texas Railway Company . . . in the penal sum of
 $10,000[.]” 236 S.W. 657, 658, 663-64 (Mo. banc 1921).

Id. at 481 (omissions in original).

 B. The Ledger Entries

 We first consider whether the ledger reflects a written promise for the payment of money

as required for the application of the ten-year statute of limitations set forth in Section

516.110(1). The written ledger shows the dates and the dollar amounts of fourteen advances

 13
totaling $80,500.00, beginning April 5, 2010. Each entry is denoted “Borrowed,” and marked

“F.S.” Each entry is initialed by Mark and Shirley. The fifteenth and final entry in the ledger

reflects a “pay back” amount of $10,000.00. We may not use extrinsic evidence to support

finding a promise of indebtedness in the ledger, but rather must look only at the ledger. See id.

At trial, extrinsic testimony indicated the ledger is handwritten primarily by Mark’s wife, Cindy,

and that “F.S.” is for Flight School. Mark testified that the amounts were correct, that he wrote

“borrowed” on the entries, and that Shirley delivered the money to him for flight school. Mark

and Shirley each initialed the entries.

 Based on the record before us, we are persuaded that the ledger constituted a written

promise to pay money. The ledger clearly shows Mark acknowledging a debt due and unpaid to

Shirley. See id. In particular, the ledger contains specific language denoting the exact amounts

“borrowed,” and manifests a promise to repay to Shirley through both of their initials to the

borrowed amounts. See id. The plain dictionary definition of “borrowed” is “to receive

temporarily from another implying or expressing the intention either of returning the thing

received or of giving its equivalent to the lender.” WEBSTER’S THIRD NEW INTERNATIONAL

DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 256 (2002). “Borrowed” is further

defined as “[t]o receive money with the understanding or agreement that it must be repaid,

usu[ally] with interest.” BLACK’S LAW DICTIONARY (11th ed. 2019). The repeated use of the

word “[b]orrowed,” plus the single use of “pay back,” fairly connotes a promise to repay the

borrowed amounts, as opposed to monies being gifted without intent of repayment. See

DiGregorio Food Prods., Inc., 609 S.W.3d at 481. While Mark and Cindy emphasize the

absence of specific repayment terms, interest rates, or a date for repayment in the ledger, such

terms are not required for a writing to show a promise to pay money; nor is it necessary for the

 14
details of the debt to be fully understood from the writing, such as the meaning of “F.S.” as

money for Flight School. See id.; Rolwing, 437 S.W.3d at 183; Martin, 217 S.W.2d at 381. The

clear language used by the parties on the ledger expresses a promise for the payment of money.

Accordingly, Section 516.110(1)’s ten-year statute of limitations applies, and Shirley’s claim

was timely filed. See DiGregorio Food Prods., Inc., 609 S.W.3d at 480–81. We affirm the trial

court’s judgment as to Count VI.6

 C. The Calendar Entry

 We next consider whether the singular calendar entry on January 31, 2009, reflects a

written promise to pay money for the American Heritage Loan. The calendar entry is from the

same physical document as the ledger and states: “$12,977.56 American Heritage M.E. S.E.”

Regarding extrinsic evidence, trial testimony indicates the entry is handwritten by Cindy. Mark

testified that the initials were his, that he received that amount of $12,977.56 from Shirley, and

that he has not yet returned that $12,977.56 to Shirley. Mark testified that the American

Heritage Loan was for an investment property that foreclosed, and he and Shirley still have their

investments in that property. Critically, however, we may not use extrinsic evidence to

determine whether the calendar entry contains by fair implication an acknowledgment of a debt

owed and unpaid. See id. at 481 (citing Cmty. Title Co., 977 S.W.2d at 502) (“[T]he promise to

pay money must arise from the writing’s explicit language; extrinsic evidence cannot supply

the promise.”) (emphasis added).

 Unlike the ledger entries relating to the Flight School Loans, the calendar entry lacks the

term “borrow,” “pay back,” or any other language suggesting a repayment obligation. When

6
 Given that the record makes clear the Flight School Loan was for $80,500.00, of which Mark had paid back
$10,000.00, we direct the trial court to amend its judgment consistent with this opinion to reflect the amount owed
as $70,500.00.

 15
limiting our review to the written entry on the calendar, we cannot characterize the language in

the calendar entry as reasonably manifesting “an acknowledgment of an indebtedness, an

admission of a debt due and unpaid.” See id. (quoting Martin, 217 S.W.3d at 381). Therefore,

because we hold the statutory exception to the five-year statute of limitations provided in Section

516.110(1) does not apply to the American Heritage Loan, the trial court erred in concluding that

Shirley’s claim in Count V was not barred by Section 516.120(1) and in holding Mark liable on

the American Heritage Loan for $12,977.00. See id. at 480. Point One is granted as to Count V

only.

II. Point Two—Claims against Cindy

 The second point on appeal challenges the judgments entered against Cindy on Counts V

and VI and contends that no substantial evidence supported an award against Cindy because

Shirley pleaded facts alleging claims only against Mark.

 Before we analyze the claim for whether the judgment was unsupported by substantial

evidence as reflected in the point relied on, we note the section header in Point Two’s argument

states the judgment is against the weight of the evidence, yet the text of the argument contends

the Amended Judgment erroneously declares or applies the law and is also against the weight of

the evidence. As explained in our standard-of-review section, a point relied on must assert one

and only one of the Murphy v. Carron grounds to comply with Rule 84.04 See Koeller, 602

S.W.3d at 287; Biggs, 598 S.W.3d at 702. Here, Mark and Cindy improperly conflate the

Murphy v. Carron grounds, rather than consistently arguing whether the trial court erred by

erroneously declaring or applying law, by issuing judgment not supported by substantial

evidence, or by issuing judgment that was against the weight of the evidence. See Koeller, 602

S.W.3d at 287; Biggs, 598 S.W.3d at 702. However, “[w]e have the discretion to review non-

 16
compliant briefs ex gratia where the argument is readily understandable.” See Scott v. King, 510

S.W.3d 887, 891–92 (Mo. App. E.D. 2017) (internal citations omitted). In this case, we choose

to exercise that discretion to review Point Two, because it adequately sets forth a claim of

reversible error on the ground that the trial court misapplied the law. See id.

 Because we granted Point One as to Count V and reversed the trial court’s judgment on

that count, in this point on appeal, we review only the remaining claim as to Count VI involving

the Flight School Loan. In Count VI of her amended petition, Shirley alleged Mark breached the

contract as to the Flight School Loan. Specifically, the amended “Sixth Count against Mark”

alleged that Shirley and Mark entered into a contract for the Flight School Loan, Mark failed to

perform by repaying her after a demand was made, and Shirley was thereby damaged. In

contrast, Shirley alleged other counts against Mark and Cindy jointly. In particular, Count VII

sought “relief from undue influence and unjust enrichment . . . against Mark and Cindy” and

raised allegations that Cindy breached fiduciary duties to her with respect to the 2002 Contract,

the American Heritage Loan, and the Flight School Loan.

 The trial court made no mention of undue influence or unjust enrichment in the Amended

Judgment and specifically denied all otherwise unaddressed claims for lack of sufficient

evidence. Given that fact, we infer the trial court denied Shirley’s claim of undue influence and

unjust enrichment averred in Count VII. Thus, our review is limited to whether the trial court

erred by holding Cindy jointly liable on Shirley’s claim for breach of contract against Mark in

Count VI.

 “In order for a party to be bound by a contract a court must find there was privity of

contract.” Baisch & Skinner, Inc. v. Bair, 507 S.W.3d 627, 632 (Mo. App. E.D. 2016).

“Privity of contract is the relationship between the parties to a contract, which allows them to sue

 17
one another but prevents a third party from doing so.” Id. (internal citation omitted). “The

doctrine of privity means that a person cannot acquire rights or be subject to liabilities arising

under a contract to which he [or she] is not a party.” Id. (internal citation omitted); see also

Captiva Lake Invs., LLC v. Ameristructure, Inc., 436 S.W.3d 619, 626 (Mo. App. E.D. 2014)

(internal citation omitted) (“Generally, a defendant who has contracted with another owes no

duty to a plaintiff who is not a party to that agreement[.]”). “This general rule of privity is

designed to protect contractual parties from exposure to unlimited liability and to prevent

burdening the parties with obligations they have not voluntarily assumed.” Id. “[O]bligations

arising out of a contract are due only to those with whom it is made; a contract cannot be

enforced by a person who is not a party to it or in privity with it.” Baisch & Skinner, Inc., 507

S.W.3d at 632 (internal quotation omitted).

 The record is clear that Shirley raised breach of contract claims in Count VI solely

against Mark. “The trial court’s authority is limited to such questions as are presented by the

parties in their pleadings.” Swift v. Fed. Home Loan Mortg. Corp., 417 S.W.3d 342, 348 (Mo.

App. S.D. 2013) (internal quotation omitted). In Point One, we determined that the ledger

constituted a writing in which Mark acknowledged indebtedness to Shirley, permitting recovery

for contract breach on the Flight School Loan. Although Shirley testified that the ledger was

handwritten by Cindy, nothing in the ledger suggests Cindy was a party to the Flight School

Loan agreement. See Baisch & Skinner, Inc., 507 S.W.3d at 632. Cindy’s name is not on the

ledger entries nor did she sign or initial the ledger entries as did Mark and Shirley. While certain

legal situations may allow a spouse to be held jointly liable for debts incurred by the other, the

pleadings and evidence in this case, along with the Amended Judgment, establish no legal basis

for holding Cindy liable for the breach of a contract to which she was not a party. See Swift, 417

 18
S.W.3d at 348; Captiva Lake Invs., LLC, 436 S.W.3d at 626. Accordingly, the trial court

misapplied the law and erred in awarding a monetary judgment on the Flight School Loan in

Count VI against both Mark and Cindy. See Koeller, 602 S.W.3d at 286 (citing Murphy, 536

S.W.2d at 32). We therefore grant Point Two as to Count VI, reverse the judgment of the trial

court as to Cindy, and direct the trial court on remand to enter judgment on the Flight School

Loan in Count VI only against Mark.

III. Point Three—The 2002 Contract

 Point Three disputes the trial court’s judgment declaring the 2002 Contract void and

unenforceable. Mark and Cindy argue that the 2002 Contract was not overly ambiguous and that

its terms were certain or capable of being made certain, thereby making the contract valid and

enforceable.

 Preliminarily, we note that Mark and Cindy improperly argue the judgment as to the 2002

Contract is against the weight of the evidence and erroneously declares or applies the law within

the same point. See Koeller, 602 S.W.3d at 287; Biggs, 598 S.W.3d at 702. However, the

record is clear that both Mark and Cindy agreed that the price term in the 2002 Contract was not

specific as to what, if any, additional sum they were to pay in the event Shirley had a residence

or other outbuildings constructed on the Property. Instead, Mark and Cindy argue that a contract

is enforceable even in the absence of a specific price, and maintain that the trial court should

have enforced the 2002 Contract and adjusted the price accordingly. Given this argument, it is

clear that Point Three alleges the trial court misapplied the law of contracts to the facts of this

case. For that reason, we choose to exercise our discretion and review Point Three. See Scott,

510 S.W.3d at 891–92 (internal citations omitted).

 19
 In the 2002 Contract reselling the Property from Shirley back to Mark and Cindy, the

parties agreed that if and when Shirley wanted to move, Mark and Cindy would pay a price for

the Property to be finalized if she built improvements. Specifically, the 2002 Contract provides:

“Price of said [P]roperty will be adjusted accordingly if a residence and/or any out buildings are

constructed on said [P]roperty and [Shirley] wishes to move[,]” and “[Mark and Cindy] agree to

pay in full any remaining balance due to [Shirley] if [Shirley] wishes to move from said

residence.” Mark and Cindy paid Shirley the $56,000.00 for the value of the land. Shirley did

not file a general warranty deed for the property because neither Mark nor Cindy paid her any

money beyond the $56,000.00 even though Shirley had a house built on the Property.

 Real estate contracts require specific terms to be enforceable for the sale of real property.

“The essential elements of an agreement to convey real property are: (1) the parties; (2) the

subject matter; (3) the promises on both sides; (4) the price; and (5) the consideration.” Barkho

v. Ready, 523 S.W.3d 37, 44 (Mo. App. W.D. 2017) (internal quotation omitted) (emphasis

added). “Under Missouri law, to have a valid real estate sale contract, that contract must set

forth ‘the stipulation of a price, or a method of determining it[.]’” Lipton-U.City, LLC v.

Shurgard Storage Ctrs., Inc., 454 F.3d 934, 938 (8th Cir. 2006) (quoting Barling v. Horn, 296

S.W.2d 94, 97 (Mo. 1956)) (finding no support for the claim that a clause providing for

arbitration of the sale price at some later date is an accepted method of determining price in a

real estate contract). “It is fundamental that in order to be binding[,] an agreement [for the sale

of land] must be definitive and certain as to its terms and requirements to enable a court to

determine its meaning and to measure the extent of the parties’ liability.” Kemp Constr. Co. v.

Landmark Bancshares Corp., 784 S.W.2d 306, 308 (Mo. App. E.D. 1990) (considering the

certainty of terms in a real estate contract); see also In re Estate of Looney, 975 S.W.2d 508,

 20
516–17 (Mo. App. S.D. 1998) (finding that stating the price per acreage made the exact price

ascertainable simply by computation so as to satisfy the statute of frauds). Thus, where the price

to be determined in the future is too indefinite and uncertain, the contract for the sale of land is

unenforceable. Barling, 296 S.W.2d at 97; see also Looney, 975 S.W.2d at 517 (internal

quotation omitted) (distinguishing the need for a specific price term from the method of

payment, “view[ing] the method of payment, as opposed to the price, as one of the matters

concerning the performance of the contract . . . which may be left open for future specification

without destruction of the contract or depriving a party remedy for its enforcement”). In

Barling, the Court recognized the agreement was not an enforceable contract for the sale of real

estate where it clearly contemplated a “first opportunity to purchase” but did not provide a stated

price on stated terms, or at a price and on the terms equal to another’s bona fide offer or fair-

market value of the property. Id.; see Peet v. Randolph, 33 S.W.3d 614, 618 (Mo. App. E.D.

2000) (citing Kellner v. Bartman, 620 N.E.2d 607, 611–12 (Ill. App. 3d 1993)) (finding a

missing price term within a right-of-first-refusal clause within a real estate contract in which

purchasers agreed to buy land for a certain price does not necessarily render the clause

unenforceable).

 The 2002 Contract is for the sale of real property—not goods or services. Courts apply a

reasonableness standard to enforce contracts lacking fixed prices for the sale of goods and

services, guided by the statutorily adopted Uniform Commercial Code (“UCC”), particularly

when establishing a price in advance would be difficult or impossible. See Allied Disposal, Inc.

v. Bob’s Home Serv., Inc., 595 S.W.2d 417, 420 (Mo. App. E.D. 1980). Contrastingly, real

estate contracts require price as an essential term. Barkho, 523 S.W.3d at 43-44; Three-O-Three

Invs., Inc. v. Moffitt, 622 S.W.2d 736, 738 (Mo. App. W.D. 1981); see also Victory Hills Ltd.

 21
P’ship I v. NationsBank, N.A. (Midwest), 28 S.W.3d 322, 329 (Mo. App. W.D. 2000) (“[B]y its

own terms, the UCC does not apply to real estate transactions[.]”). Real estate contracts are

subject to the extraordinary remedy of specific performance because they convey a unique

interest in a particular tract of land, thus their essential terms “should be so precise and exact that

neither party could reasonably misunderstand them.” Peet, 33 S.W.3d at 621 n.2 (Teitelman, J.,

dissenting) (internal quotation and citations omitted). While parties to a contract for goods or

services have more flexibility in providing an indefinite or indeterminate price in a contract, the

nature of the 2002 Contract subjects this contract to more demanding principles of law. See

Barkho, 523 S.W.3d at 43-44; Peet, 33 S.W.3d at 618; Looney, 975 S.W.2d at 516–17; Allied,

595 S.W.2d at 420–21. Given the subject matter of the 2002 Contract, Mark and Cindy fail to

meet their burden on appeal. Notably, Mark and Cindy offer no precedential authority in which

a Missouri court enforced a contract for the sale of real property containing no stated price and

without a clear method of determining the future price. See, e.g., Warren v. Trib. Broad. Co.,

LLC, 512 S.W.3d 860, 866 (Mo. App. W.D. 2017) (finding terms in an oral contract promising

to an employee an annual revenue-based bonus determined by the formula used to calculate

bonuses sufficiently certain to create an enforceable contract); Tom’s Agspray, LLC v. Cole, 308

S.W.3d 255, 260 (Mo. App. W.D. 2010) (finding terms allowing for reasonable charges for

seeding-related goods and services sufficiently certain to create an enforceable contract); Smith

Moore & Co. v. J.L. Mason Realty & Inv., Inc., 817 S.W.2d 530, 533 (Mo. App. E.D. 1991)

(finding terms of written agreement for underwriting services for land-secured bonds capable of

being determined by mutual agreement sufficient to create an enforceable contract). “It is not . .

. the duty of this [C]ourt to develop theories of error and search for reasons to reverse the

judgment entered. The ruling as it comes to us is presumptively correct and the [appellants] have

 22
the burden of demonstrating that the judgment is erroneous.” S. Mo. Dist. Council of

Assemblies of God v. Hendricks, 807 S.W.2d 141, 146 (Mo. App. S.D. 1991) (finding a contract

for the sale of land did not state various essential terms sufficient to support a decree of specific

performance, including the parties’ names and signatures, the description of the land, and

promises between the parties); see also Stadium W. Props., L.L.C. v. Johnson, 133 S.W.3d 128,

141 (Mo. App. W.D. 2004) (finding partial descriptions of the land for purposes of tax sale were

“simply not specific enough to describe the real estate to be sold with reasonable certainty”).

 The 2002 Contract provides that the price of the Property would be “adjusted

accordingly if a residence and/or any out buildings are constructed on said [P]roperty and

[Shirley] wishes to move.” We are not persuaded that this term provides an acceptable method

for determining price in a real estate contract. See Lipton-U.City, 454 F.3d at 938 (citing

Barling, 296 S.W.2d at 97). We find an inherent uncertainty in the phrase “adjusted

accordingly” as used in the 2002 Contract as that term makes no reference to any particular

method of determining the price on which a court may reasonably rely in finding clear and

convincing evidence of a certain price term in a real estate contract. See Barkho, 523 S.W.3d at

43–44; see also Barling, 296 S.W.2d at 97. The 2002 Contract is silent as to how the price shall

be “adjusted accordingly.” No terms indicate the price would be based on fair market value,

assessed valuation by either real estate experts or a county assessor, projected or actual cost of

building(s) construction, nor any other measure. Rather, the 2002 Contract terms lack any

method for determining the “adjustment” required to fix a price for the real property. See

Lipton-U.City, 454 F.3d at 938 (citing Barling, 296 S.W.2d at 97).

 23
 Therefore, we hold the trial court did not err by misapplying the law in declaring the

2002 Contract void and unenforceable. See Koeller, 602 S.W.3d at 286 (citing Murphy, 536

S.W.2d at 32); Woodson, 602 S.W.3d at 323. Point Three is denied.

IV. Cross-Appeal Point One—Easement by Implication

 In her sole point on cross-appeal, Shirley charges the trial court with error in failing to

grant her an easement by implication for the Roadway as pleaded in Count I of her amended

petition. Preliminarily, Mark and Cindy seek dismissal of Shirley’s cross-appeal for failure to

comply with Rule 84.04(d)(1) because the point on appeal fails to identify the legal reasons for

the claim of reversible error or why those reasons support the claim of error.

 The mandatory requirements concerning the points relied on in Rule 84.04(d)(1) are “not

simply a judicial word game or a matter of hypertechnicality on the part of appellate courts.”

Kieffer v. Gianino, 301 S.W.3d 119, 120 (Mo. App. E.D. 2010) (quoting Thummel v. King, 570

S.W.2d 679, 686 (Mo. banc 1978)). Rather, “[t]he purpose of Rule 84.04(d)(1) is to

provide notice to the opposing party as to the precise matters that must be contended with and to

inform the court of the issues presented for review.” Id. at 120–21 (internal quotation omitted).

Failure to comply with Rule 84.04(d)(1) preserves nothing for appeal and warrants

dismissal. Id.; see Biggs, 598 S.W.3d at 701.

 We agree that Shirley’s point relied on is deficient under Rule 84.04(d)(1). The point

relied on does not explain how her pleadings and the judicial admission support a claim of

reversible error. Most damaging to Shirley’s point on appeal, as Mark and Cindy note, while

correctly stating that Murphy v. Carron governs our review, the point on appeal is silent as to

which of the authorized Murphy v. Carron grounds she is asserting. See Koeller, 602 S.W.3d at

287; Biggs, 598 S.W.3d at 702 (citing Murphy, 536 S.W.2d at 32) (noting dismissal of a point

 24
relied on is appropriate under Rule 84.04 where an appellant fails to identify which of the

Murphy v. Carron standards applies). Although failure to properly state the standard of review is

deficient under Rule 84.04, we may review the point without improperly advocating for a party

where the appropriate standard is clear from the argument. See Scott, 510 S.W.3d at 891–92

(internal citation omitted). In her standard of review, Shirley does not aver that the trial court’s

judgment is unsupported by substantial evidence. Instead, Shirley refers to a “weight of the

evidence” review. Moreover, Shirley’s cross-appeal does not allege any erroneous misstatement

or misapplication of law by the trial court. See Koeller, 602 S.W.3d at 287 (internal citation

omitted). While Shirley’s point relied on as drafted is deficient under Rule 84.04(d)(1), we

choose to exercise our discretion to conduct appellate review because the argument portion of

her brief is limited to and adequately alleges that the Amended Judgment is against the weight of

the evidence. See id.7 We review the cross-appeal on this basis alone.

 An against-the-weight-of-the-evidence challenge presents “an appellate test of how much

persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a

necessary fact.” Ivie v. Smith, 439 S.W.3d 189, 206 (Mo. banc 2014); see also Koeller, 602

S.W.3d at 287 (internal citation omitted) (noting a substantial-evidence challenge and an against-

the-weight challenge are distinct legal arguments). To show the trial court’s judgment was

against the weight of the evidence, an appellant must adhere to the following analytical

framework:

 (1) identify the trial court’s finding he [or she] seeks to challenge as against the
 weight of the evidence; (2) identify all favorable evidence submitted during trial
 that would support that finding; (3) identify evidence contrary to the trial court’s
 finding; and (4) explain why, in light of the whole record, the supporting evidence

7
 We choose to treat Shirley’s briefing deficiencies in the same manner as we treated the briefing deficiencies of
Mark and Cindy.

 25
 is so lacking in probative value that the trier of fact should have reached a different
 conclusion.

O’Gorman & Sandroni, P.C., 478 S.W.3d at 544 (internal citation omitted); see also Biggs, 598

S.W.3d at 702 n.8 (citing Houston, 317 S.W.3d at 187).

 Where a party lacks an easement by title, a party may seek an easement by implication.

Hillside Dev. Co., Inc. v. Fields, 928 S.W.2d 886, 889 (Mo. App. W.D. 1996) (“[I]t is only when

the title to property does not contain the claimed easement that the question even arises whether

an implied easement exists, for if the easement were in the title, then it would be an express

easement, not an implied one.”).8 A party may acquire an easement by implication by

demonstrating the following four elements:

 (1) unity and subsequent separation of title; (2) obvious benefit to the dominant
 estate and burden to the servient portion of the premises existing at the time of
 conveyance; (3) use of the premises by the common owner in their altered condition
 long enough before the conveyance and under such circumstances as to show that
 the change was intended to be permanent; and (4) reasonable necessity for the
 easement.

Baetje v. Eisenbeis, 296 S.W.3d 463, 467 (Mo. App. E.D. 2009) (internal quotation omitted); see

also Dohogne, 307 S.W.3d at 666. The proponent of the easement by implication must prove all

four elements by clear and convincing evidence. Dohogne, 307 S.W.3d at 666; Baetje, 296

S.W.3d at 467.

 Here, Shirley pleaded the elements of an easement by implication and presented evidence

establishing the easement at trial. In her argument on appeal, Shirley presents all the evidence at

trial related to the trial court’s judgment denying the easement by implication and argues why, in

light of the whole record, the trial court should have reached a different conclusion. See Biggs,

8
 Mark and Cindy suggest that merger following the delivery and acceptance of the 1997 Contract precludes Shirley
from arguing an easement by implication exists. We agree that the terms of the1997 Contract are relevant, given the
unenforceability of the 2002 Contract, but because the record contains no easement by title, Shirley may petition the
circuit court to recognize an easement by implication upon proof of the four elements.

 26
598 S.W.3d at 702 n.8 (citing Houston, 317 S.W.3d at 187); O’Gorman & Sandroni, P.C., 478

S.W.3d at 544 (internal citation omitted). Shirley read portions of the 1997 Contract into the

record and further submitted into evidence the 1997 Contract showing the Sellers’ intent to grant

a permanent easement for the Roadway when she purchased the Property from Mark and Cindy.

See Dohogne, 307 S.W.3d at 666; Baetje, 296 S.W.3d at 467. Shirley also submitted into

evidence the survey illustrating the Roadway, as well as handwritten ledgers showing her

payments towards the construction of the Roadway. Shirley testified about her continuous use of

the Roadway since 1997 and its reasonable necessity to benefit her with ingress/egress access

across Mark and Cindy’s property to Hardin Road, which is otherwise blocked by a creek. See

Dohogne, 307 S.W.3d at 666; Baetje, 296 S.W.3d at 467. The evidence was also uncontradicted

that the 1997 Contract resulted in separation of title from a previously unified estate with a

corresponding benefit and burden to the dominant estate and servient portion. Concerning

evidence supporting the judgment, Mark testified that he was not opposed to Shirley using the

road as an easement, nor did he object to the trial court saying that Shirley possessed an

easement for the Roadway. Mark testified that he did not have a problem with the easement

being where the Roadway is now located. The trial court then stated that the issue related to the

easement was resolved. Shirley marshalled evidence supporting the establishment of the

easement by implication that had far greater probative value than any evidence against such

easement. See Ivie, 439 S.W.3d at 205–06. While Shirley may not have followed the precise

guidelines in mapping out her “against the weight of the evidence argument,” she has provided

this Court with a sufficiently substantive record allowing us to review her point without

becoming her advocate.

 27
 Given the overwhelming evidence at trial demonstrating that Shirley satisfied the

required elements to be granted an easement by implication, we find the trial court’s judgment

not granting an easement by implication of the Roadway to be against the weight of the

evidence. See Parkway Constr. Servs., Inc., 573 S.W.3d at 664; O’Gorman & Sandroni, P.C.,

478 S.W.3d at 544; Dohogne, 307 S.W.3d at 666. Therefore, we grant Shirley’s sole point relied

on and remand this matter to the trial court with instructions.

 Conclusion

 We reverse the judgment holding Mark and Cindy liable on the American Heritage Loan

in Count V. We reverse the judgment holding Cindy liable for the Flight School Loan in Count

VI. We reverse the trial court’s judgment denying the easement by implication sought in Count

I. We affirm the trial court’s judgment in all other respects. We remand this matter to the trial

court with instructions to reverse the judgment in Count V, to remove Cindy from the judgment

in Count VI and amend the amount owed by Mark on Count VI to $70,500.00. Mark’s

obligations under Count VI are set-off by the $56,000.00 Shirley owes Mark and Cindy from

unraveling the 2002 Contract, leaving Shirley with a total judgment of $14,500.00 against Mark.

We further direct the trial court on remand to enter judgment in Count I granting Shirley an

easement by implication in a manner consistent with this opinion.

 _______________________________
 KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

 28